## 61060. CAMP et al. v. SELLERS & COMPANY, LTD.

QUILLIAN, Chief Judge.

Plaintiffs, husband and wife, brought a tort action against the manufacturer of a machine which injured the plaintiff husband's left hand. The defendant was a foreign corporation located in the United Kingdom of Great Britain and Northern Ireland (hereinafter Great Britain). The complaint and summons were served upon the defendant by substituted service through the office of the Secretary of State on July 12, 1979. The defendant corporation failed to answer and was in default. The cause then came on for trial by jury on the issue of damages which resulted in a verdict for the plaintiffs. Judgment was entered on the verdict on November 29, 1979 and then amended on January 7, 1980 to correct a typographical error. On February 14, 1980, defendant filed a motion to set aside the judgment asserting several grounds: among which were that the defendant corporation was not transacting business in the state so as to subject it to service under the Corporate Service Act (Code Ann. § 22-1401) and that the defendant, being a foreign corporation, had to be served in compliance with the provisions of a certain treaty to which the United States and Great Britain were signatories.

The trial judge granted the defendant's motion to set aside the judgment predicated on the following grounds as set out in his order.

"Plaintiffs alleged that the defendant is 'a foreign corporation, incorporated, registered, and with its principal place of business at Chapel Hill, Huddersfield, England. . . .' Plaintiffs further allege that service upon the defendant can be had upon the Secretary of State of Georgia, pursuant to Ga. Code Ann. 22-1410.

"Plaintiffs' claimed ability to serve the Secretary of State of Georgia to effect service on an English corporation, which manufactured and sold a machine to a party other than plaintiffs, is not recognized by the statutes under which plaintiffs claim. Specifically, Ga. Code Ann. 22-1401 explicitly excludes 'transactions in interstate or foreign commerce' as constituting the transaction of business in Georgia. Ga. Code Ann. 22-1401(b) (9). (Other exclusions listed under Ga. Code Ann. 22-1401 (b) might also apply.) Unless such a foreign corporation is required to register with the Secretary of State, pursuant to the provisions of Ga. Code Ann. Chapter 22-14, it cannot "fail" to appoint or maintain an agent in this state so as to trigger the service of process provisions of Ga. Code Ann. 22-1401 (b), under which plaintiffs claim their right of service. *Spiegel, Inc. v. Odum,* [153 Ga. App. 380 (265 SE2d 297)], . . ." *Held:*

1. It is apparent the trial judge therefore relying on *Spiegel, Inc. v. Odum,* 153 Ga. App. 380, supra, rested his decision on the

determination that the defendant corporation was not required to be qualified under Code Ann. § 22-1401 (a) (Ga. L. 1968, pp. 565, 707; 1969, pp. 152, 201) and thus service upon it could not be made under Code Ann. § 22-1410 (b) (Ga. L. 1968, pp. 565, 715; as amended through Ga. L. 1972, p. 433). The evidence proffered in this case does not demand a contrary result.

However, the plaintiffs requested additional discovery in order to sustain their grounds for jurisdiction predicated on defendant corporation transacting business within the state. While the trial judge has a discretion as to limiting discovery, in a situation of this sort where the issue is vital to plaintiffs' remaining in court we find the refusal to permit plaintiffs at least a reasonable opportunity to establish their basis for service under Code Ann. § 22-1410 (b) to constitute an abuse of discretion. See *Buchan v. Duke,* 153 Ga. App. 310 (2) (265 SE2d 308).

A careful examination of the events that transpired prior to the trial judge's ruling on the motion to set aside reveals that the plaintiffs did not waive their right to insist upon further discovery. We further find that the plaintiff's actions did not constitute such consent as to irrevocably preclude the plaintiff from urging this issue. Hence, the case must be reversed.

2. Although not passed upon by the trial judge, the grounds raised regarding the applicability of a treaty or "convention" could be dispositive of this case. We, therefore, discuss this issue for the benefit of the parties.

The instrument in question is included in the record only as an exhibit to defendant's trial brief and was not formally introduced into evidence. However, it is argued that it can be considered because of its status as a treaty and thus subject to our judicial notice.

Under the Civil Practice Act "a party who intends to raise an issue concerning the law of another State or of a foreign Country shall give notice in his pleadings or other reasonable written notice. The court, in determining such law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the rules of evidence. The court's determination shall be treated as a ruling on a question of law." Code Ann. § 81A-143 (c) (Ga. L. 1966, pp. 609, 654; 1968, pp. 1104, 1108).

The United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Art. VI, Par. 2, U. S. Constitution (Code Ann. §

1-602).

The Georgia Constitution proclaims: "The laws of general operation in this State are, first: As the Supreme law: The Constitution of the United States, the laws of the United States in pursuance thereof and all treaties made under the authority of the United States." Art. XI, Sec. I, Par. I, Ga. Constitution (Code Ann. § 2-6801).

As has been pointed out under the title Treaties in American Jurisprudence: "A treaty entered into by the United States in accordance with constitutional requirements, and which does not require legislation to carry these provisions into effect, that is to say, is self-executing, is a municipal law as well as an international contract. The effect of the provision of the supremacy clause of the Federal Constitution is to incorporate into the municipal law of the United States, and of each and every state, treaties entered into by the Federal Government within the constitutional limits of the treaty-making power, insofar as they affect individual rights. Under such constitutional provision, a public treaty is not merely a compact or bargain to be carried out by the executive and legislative departments of the general government, but a living law, operating upon and binding the judicial tribunals, state and federal; and these tribunals are under the same obligation to note it and give it effect as they are to notice and enforce the Constitution and the laws of Congress made in pursuance thereof." 74 AmJur2d 830, Treaties, § 5.

"By express command of the Constitution, it is the duty of the judges of every state to uphold and enforce treaties of the United States, anything in the constitution or laws of any state to the contrary notwithstanding." 74 AmJur2d 851, Treaties, § 35.

We therefore take it as established that judicial notice must be taken of a treaty and that it will predominate over any statutory provision of the State of Georgia.

1 USCA § 112a provides that the publication entitled "United States Treaties and Other International Agreements" is legal evidence of all treaties and international agreements. We, therefore, look to Vol. 20 Part 1, U. S. Treaties and Other International Agreements 1969 (20 UST 361, TIAS 6638). The treaty, or "Convention" as it is termed, is styled "Multilateral" and entitled "Service Abroad of Judicial and Extra Judicial Documents." It specifically provides for the method of service in another foreign country which is a signatory to the treaty. It provides procedures whereby each signatory nation creates or designates a central authority for the purpose of accepting documents which are forwarded to it for service and that the central authority has the responsibility to effect service within its jurisdiction in a manner

consistent with its own laws. It provides for the issuance of a certificate by the foreign country as an acknowledgement of the service. Article 15 encompasses a situation where the defendant has not appeared, that is, is in "default." The section reads: "Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that — (a) the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or (b) the document was actually delivered to the defendant or to his residence by another method provided for by this Convention, and that in either of these cases the service or the delivery was affected in sufficient time to enable the defendant to defend. Each contracting State shall be free to declare that the judge, notwithstanding the provisions of the first paragraph of this article, may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled — (a) the document was transmitted by one of the methods provided for in this Convention, (b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document, (c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed. Notwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures."

Article 15 places the burden upon the plaintiff to establish that its conditions were met prior to effectuating a valid judgment against the defendant predicated on the defendant's non-appearance. If the plaintiff fails to establish that either of the first two alternative provisions were fulfilled, then the plaintiff must establish that all of the three alternative conditions were met in order to obtain a valid judgment on a foreign defendant.

Here, from the facts neither of the first two methods were established, i.e., that the document was served by a method prescribed by the internal law of the state addressed or that the document was actually delivered to the defendant by another method provided for by the "Convention." Since the issue relative to the treaty was previously ignored, on reconsideration the parties should be permitted to introduce evidence pertinent thereto as well as authority regarding the effect and applicability of the "treaty" vis-a-vis the Georgia law pertaining to service.

Judgment is reversed with direction that the plaintiff be

permitted such additional discovery as is determined to be reasonably warranted.

*Judgment reversed with direction. McMurray, P. J., and Pope, J., concur.*

DECIDED APRIL 15, 1981 —
REHEARING DENIED MAY 27, 1981 —

*James W. Lewis,* for appellants.
*Ben L. Weinberg, Jr., Dan Wingate,* for appellee.

ON MOTION FOR REHEARING.

On motion for rehearing counsel for the appellant has argued at great length concerning the treaty and has attempted to introduce evidence as to its applicability or lack thereof. Our original decision discussed the general principles involved and recognized the existence of questions which had not been thoroughly addressed, but expressly left the specific issues for determination below. See the last sentence of the penultimate paragraph of the main opinion.

*Motion for rehearing denied.*