### 44150. GUST et al. v. FLINT.
(356 SE2d 513)

WELTNER, Justice.

George Flint, a resident of Georgia, responded to an advertisement printed in a trade paper published in Nebraska and mailed to Flint in Georgia. Roger Gust and Twin Grove Trailers & Pate Tractor, Inc., of Madison, Wisconsin, had inserted the advertisement for a customized truck and trailer which attracted Flint's interest, and by long distance telephone the parties struck a bargain, pursuant to which Flint sent a $6,000 deposit toward the purchase price of the truck and trailer. After the deposit was received the sellers informed Flint that they could not deliver the truck and trailer he had ordered and attempted to persuade Flint to accept a substitute. When Flint refused to do so, the sellers refused to return his deposit.

Flint filed suit against the sellers in Georgia, predicating personal jurisdiction over the Wisconsin parties on OCGA § 9-10-91, this state's long-arm statute. The out-of-state defendants, who were served personally in Wisconsin, moved to dismiss Flint's complaint, contending that under Georgia's long-arm statute they were not subject to personal jurisdiction in this state. The affidavits filed in support of the motion to dismiss, which were not traversed, showed that the defendants: (1) did not regularly do business or solicit business within the State of Georgia, (2) did not engage in any persistent course of conduct within the State of Georgia, (3) did not derive substantial revenue from services rendered within the State of Georgia, (4) the only business done by them in the State of Georgia is the transaction which is the subject of the instant action, (5) the only communications or connection they have had with the State of Georgia had been via telephone communication, (6) that neither they nor any of their employees have ever been located within the State of Georgia, (7) the corporate defendant is not domesticated in or authorized to do business in the State of Georgia and does not manufacture goods or produce any services in the State of Georgia. Thus, they demonstrated that they had done none of the acts which OCGA § 9-10-91 requires as a basis for personal jurisdiction. (Flint later amended his complaint to add a claim for breach of contract.)

The trial court sustained the motion to dismiss. The Court of Appeals reversed, holding that the trial court had personal jurisdiction of the tort claim but not the claim for breach of contract, *Flint v. Gust,* 180 Ga. App. 904 (351 SE2d 95) (1986). We granted certiorari

to determine whether the issue in this case is controlled by *Coe & Payne Co. v. Wood-Mosaic Corp.*, 230 Ga. 58 (195 SE2d 399) (1973), and *Clarkston Power Flow, Inc. v. Thompson*, 244 Ga. 300 (260 SE2d 9) (1979), that is to say, by a literal construction of Georgia's long-arm statute.

The unrebutted affidavits filed in support of the out-of-state defendants' motion to dismiss clearly establish that the defendants have done none of the acts set forth in OCGA § 9-10-91 which must be done in order to subject them to personal jurisdiction of a Georgia court. We need not discuss the relative merits of a "New York rule" or an "Illinois rule." The rule that controls is our statute, which requires that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction. Where, as here, it is shown that no such acts were committed, there is no jurisdiction.

*Judgment reversed. All the Justices concur, except Smith, J., who dissents.*

GREGORY, Justice, concurring.

I agree with the judgment of the majority opinion and its analysis. However, I suggest there may be a valid reason to pursue the relative merits of the "New York rule" versus the "Illinois rule." To do so might tend to focus public attention on the contrary philosophies underlying each. For my part, I fail to see why Georgia would not want its courts to have the maximum jurisdiction permissible within constitutional due process. A legislative act simply extending the jurisdiction of the Georgia courts to the maximum limit permitted within the restraints of due process of law would accomplish this result.

I am authorized to state that Justice Bell joins in this concurring opinion.

SMITH, Justice, dissenting.

Under our Long-Arm Statute, OCGA § 9-10-91, as interpreted by the majority today, a civil defendant from another state who has committed the intentional tort of fraud against a citizen of this state is better off than a defendant from another state who sends a negligently manufactured product to Georgia. Unfortunately, it may appear that we punish carelessness but only wink at outright deception. We should not send the wrong message to those who would launch deceptive business practices into Georgia from afar.

As Justice Gregory states in his concurrence, Georgia should have a Long-Arm Statute that fits the contours of the limits of constitutional due process. Citing *Coe & Payne Co v. Wood-Mosaic Corp.*, 230 Ga. 58 (195 SE2d 399) (1973), the Fifth Circuit Court of Appeals noted that a non-resident "who simply places [a] product in the

stream of commerce with reason to anticipate that it may find its way into the forum state may well be [amenable] to service of process if as a matter of state policy the applicable long-arm statute undertakes to go that far." *Thorington v. Cash*, 494 F2d 582, 587 (5th Cir. 1974). The *Thorington* court went on to state, "[w]e see no reason why the same principle is not equally applicable when a non-resident sends material misrepresentations into the forum state with the intention that they be relied upon and where they are in fact relied upon by a resident of the forum state to his detriment. Unlike many of the stream of commerce products liability cases in which the non-resident defendant merely had reason to anticipate that the product would enter the forum state, Cash, in a complaint that fully meets F.R.Civ.P. 8 (a), is alleged to have personally transmitted the misrepresentations into Georgia either by mail or telephone, or both." Id. at 587.

While the advertising campaign in this case could well bring the appellants within the range of our Long-Arm Statute under an interpretation similar to that made in *Thorington*, supra, the direct telephone contact and negotiations certainly should. I would follow such a broad interpretation and affirm the opinion of the Court of Appeals.

DECIDED JUNE 4, 1987.

*Oliver & Oliver, William R. Oliver*, for appellants.
*Ernest H. Woods III*, for appellee.