## A95A0393. PRATT & WHITNEY CANADA, INC. v. SANDERS et al.
### (460 SE2d 94)

BLACKBURN, Judge.

Jerry Sanders and Joseph Sanders, as representatives of the estate of Terry Sanders, brought the underlying products liability action against Pratt & Whitney Canada, Inc., (PWC) and numerous others, alleging that the PT6A gasoline turbine engine made by PWC was faultily designed, causing the fatal crash, in Kentucky, of a King Air 100 airplane in which plaintiffs' decedent was a passenger. PWC denied the material allegations of the complaint and moved to dismiss it due to the absence of personal jurisdiction and insufficiency of service of process. PWC's jurisdictional challenges were denied, and the case proceeded to trial with PWC as the sole remaining defendant. The jury found for plaintiffs, and PWC appeals the denial of its motions for new trial and for judgment n.o.v.

In its first enumeration of error, PWC contends the trial court erred in denying its motion to dismiss for lack of personal jurisdiction.

The controlling facts of this case are clear: plaintiffs are not Georgia residents; the plane did not crash in Georgia; and the defendant, PWC, is not a Georgia corporation.[1] Under these facts, Georgia

---

[1] Essentially, the dissent would find that the exercise of personal jurisdiction over PWC is proper as it is a resident foreign corporation by virtue of its "doing business" in Georgia.

law does not authorize the exercise of jurisdiction. The corporations over which Georgia might exercise jurisdiction fall into three categories: (1) domestic corporations, i.e., corporations organized and existing under the laws of Georgia; (2) resident foreign corporations, i.e., corporations organized and existing under the laws of another state but authorized to do business in Georgia (OCGA § 14-2-1501); and (3) nonresident foreign corporations, i.e., corporations organized and existing under the laws of another state and not authorized to do or transact business in this state (OCGA § 9-10-90). General jurisdiction can be exercised over domestic corporations and resident foreign corporations. *Allstate Ins. Co. v. Klein*, 262 Ga. 599 (422 SE2d 863) (1992). However, jurisdiction is limited by the Long Arm Statute when dealing with nonresident foreign corporations. Id. See also *Gust v. Flint*, 257 Ga. 129 (356 SE2d 513) (1987); *McDonnell v. Roy E. Beatty & Assoc.*, 203 Ga. App. 807 (1) (418 SE2d 95) (1992).

In *Klein*, supra, the Georgia Supreme Court determined that "a plaintiff wishing to sue in Georgia a corporation authorized to do business in Georgia is not restricted by the personal jurisdiction parameters of [the Long Arm Statute, OCGA] § 9-10-91, including the requirement that a cause of action arise out of a defendant's activities within the state." In *Klein*, the Supreme Court focused on the definition of "nonresident" in the Long Arm Statute, OCGA § 9-10-90.[2] The Court reasoned that "[i]t is apparent from the language of this definition that a corporation which *is* 'authorized to do or transact business in this state at the time a claim' arises is a 'resident' for purposes of personal jurisdiction over that corporation in an action filed in the courts of this state. As a resident, such a foreign corporation may sue or be sued to the same extent as a domestic corporation." *Klein*, supra at 601.

In the present case, PWC is a Canadian corporation with its principal place of business in Longueuil, Quebec. PWC is not authorized to do or transact business in Georgia, does not have any offices or employees in Georgia, and does not have a registered agent for service of process in Georgia. Virtually all aircraft engines manufactured by PWC are sold FOB Longueuil, Quebec, Canada. Although at least two Georgia corporations purchase products from PWC, it is clear that PWC is a nonresident, as defined by OCGA § 9-10-90. "The Long Arm Statute applies solely to persons who were *non-residents* of

---

While a foreign corporation can be a "resident" for purposes of personal jurisdiction, the facts of this case do not support such a conclusion.

[2] OCGA § 9-10-90 provides, in pertinent part: "As used in this article, the term 'nonresident' includes . . . a corporation which is not organized or existing under the laws of this state and is not authorized to do or transact business in this state at the time a claim or cause of action under Code Section 9-10-91 arises."

Georgia at the time the act or omission complained of occurred. [Cit.]" *Klein*, supra at 600. Because PWC is a nonresident, the exercise of personal jurisdiction over it requires that the cause of action arise out of its activities within the state. Id.

The dissent recognizes that no jurisdiction attached under the Long Arm Statute, but contends that general jurisdiction applies due to PWC's "continuous and systematic commercial contacts with this State." While the dissent emphasizes the number of orders made by PWC customers in Georgia, we have previously determined that transacting business requires "more than mail orders which require acceptance in a nonresident state. Furthermore, transacting business would not be involved where the sole local performance was delivery of items ordered to this state. [Cits.]" *Coe & Payne Co. v. Wood-Mosaic Corp.*, 125 Ga. App. 845, 857 (189 SE2d 459) (1972) rev'd on other grounds 230 Ga. 58 (195 SE2d 399) (1973). Visits to Georgia by the agents of a nonresident foreign corporation have also been held to be insufficient contacts to Georgia to support jurisdiction in breach of contract actions. See *O. N. Jonas Co. v. B & P Sales Corp.*, 232 Ga. 256 (206 SE2d 437) (1974); *Mayacamas Corp. v. Gulfstream Aerospace Corp.*, 190 Ga. App. 892 (380 SE2d 303) (1989). Additionally, placing advertisements in national newspapers is insufficient to support jurisdiction in Georgia. See *Gust*, supra.

Although individual presence is still a sufficient basis for jurisdiction when dealing with a person, when dealing with a corporation, more is required. "International Shoe illustrates the problems with dealing with the 'fiction' of the corporate personality. Corporate presence can only be manifested by corporate activity and therefore a minimum contacts analysis seems appropriate. However, when an individual is personally served within the state, we are talking about *actual* presence. Minimum contacts analysis is not necessary." *Humphrey v. Langford*, 246 Ga. 732, 733 (273 SE2d 22) (1980).

The test for sufficient minimum contacts was discussed in *Shellenberger v. Tanner*, 138 Ga. App. 399 (227 SE2d 266) (1976), and reflected in our present Long Arm Statute. " '(1) The nonresident must purposefully avail himself of the privilege of doing some act or consummating some transaction with or in the forum. . . . (2) The plaintiff must have a legal cause of action against the nonresident, which *arises out of, or results from, the activity or activities of the defendant within the forum*; and (3) If (and only if) the requirements of Rules 1 and 2 are established, a "minimum contact" between the nonresident and the forum exists; the assumption of jurisdiction must be found to be consonant with the due process notions of "fair play" and "substantial justice." ' " *State of South Carolina v. Reeves*, 205 Ga. App. 656, 657 (423 SE2d 32) (1992). A finding of jurisdiction over a nonresident outside the confines of the Long Arm Statute "would

result in an unconstitutionally broad construction of" the statute. Id. at 658. "The rule that controls is our statute, which requires that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction." *Gust*, supra at 130.

Because PWC is a nonresident foreign corporation, the cases cited by the dissent, with one exception, are inapposite as they involve either *resident* foreign corporations or jurisdiction based on the Long Arm Statute. See *Reeves v. Southern R. Co.*, 121 Ga. 561 (49 SE 674) (1905) ("A foreign corporation doing business in this State and having agents located therein for this purpose may be sued and served in the same manner as domestic corporations."); *Harry S. Peterson Co. v. Nat. Union Fire Ins. Co.*, 209 Ga. App. 585 (434 SE2d 778) (1993) ("National, a Pennsylvania corporation, answered, admitting that it was a Pennsylvania corporation qualified to do business in Georgia and that its registered agent in Georgia was the person served."); *Showa Denko K.K. v. Pangle*, 202 Ga. App. 245, 247 (414 SE2d 658) (1991) (jurisdiction over nonresident foreign corporation pursuant to the Long Arm Statute, OCGA § 9-10-91 (3)); *Winston Corp. v. Park Elec. Co.*, 126 Ga. App. 489 (191 SE2d 340) (1972) (whether a foreign corporation which had transacted business in Georgia without first having procured a qualification certificate required by OCGA § 14-2-1501, had ability to maintain a cause of action in Georgia courts in violation of OCGA § 14-2-1502); *Louisville &c. R. Co. v. Meredith*, 66 Ga. App. 488, 491 (18 SE2d 51) (1941) (The defendant, a foreign corporation operating railroad lines in Georgia, had an office and agent for service of process in Georgia.).

The dissent also relies on *Aiken Asphalt Paving Co. v. Winn*, 133 Ga. App. 3 (209 SE2d 700) (1974). In *Aiken*, the cause of action did not arise out of the business conducted in Georgia by the nonresident foreign corporation. Therefore, the Long Arm Statute did not provide a basis of jurisdiction. The court, however, exercised jurisdiction over the nonresident foreign corporation based upon a finding that it was "doing business" in Georgia. Id. at 5. The analysis of the court in *Aiken* was overruled sub silentio by the Georgia Supreme Court in *Gust*, supra at 130, and *Klein*, supra at 600, wherein the Supreme Court made it clear that jurisdiction over a nonresident foreign corporation can only be maintained within the confines of the Long Arm Statute. Therefore, the "doing business" analysis of *Aiken*, supra, can no longer be followed.

In a proper case, where the cause of action arises out of PWC's activities within the State of Georgia, our Long Arm Statute would provide a basis for the exercise of jurisdiction in Georgia. In the present case, however, Georgia has no basis to assert jurisdiction over PWC, a nonresident foreign corporation, because the cause of action

did not occur in Georgia, and no other basis exists therefor. The trial court's denial of PWC's motion to dismiss was erroneous.

*Judgment reversed. Birdsong, P. J., Andrews, Johnson and Ruffin, JJ., concur. Beasley, C. J., and Pope, P. J., concur specially. McMurray, P. J., dissents. Smith, J., not participating.*

BEASLEY, Chief Judge, concurring specially.

The nonresident defendant does transact business within Georgia and could come under the first ground which OCGA § 9-10-91 provides for the exercise of personal jurisdiction over it. In this regard, there are enough of those "minimum contacts" which would satisfy federal and state constitutional due process concerns.

The problem is that the cause of action in this case did not arise from any of the acts or omissions in the transaction of that business, which is another requirement of long arm jurisdiction under that statute. They arose out of an airplane crash in Kentucky.

The dissent would hold that there was jurisdiction over the nonresident beyond the confines of the Long Arm Statute. Although that might be possible under constitutional due process law, as recognized in *Gust v. Flint*, 257 Ga. 129 (356 SE2d 513) (1987), that is not Georgia's law. "[T]he requirement that a cause of action 'arise out of' activities within the state (OCGA § 9-10-91), applies . . . to the exercise of personal jurisdiction over *nonresidents*." *Allstate Ins. Co. v. Klein*, 262 Ga. 599, 600 (422 SE2d 863) (1992).

Justice Gregory, in his concurring opinion in *Gust*, proposed that Georgia revise its law so that "its courts [would] have the maximum jurisdiction permissible within constitutional due process." Id. at 130. The Supreme Court had earlier noted, in a case involving subsection (3) rather than purportedly subsection (1), that "the policy of our Long Arm Statute is to exercise jurisdiction over nonresident defendants to the maximum extent permitted by procedural due process. [Cit.]" *Bradlee Mgmt. Svcs. v. Cassells*, 249 Ga. 614, 617 (292 SE2d 717) (1982). It extracted this statement from the decision in *Coe & Payne Co. v. Wood-Mosaic Corp.*, 230 Ga. 58 (195 SE2d 399) (1973), which was reaffirmed in *Clarkson Power Flow v. Thompson*, 244 Ga. 300 (260 SE2d 9) (1979). Whether the boundaries of our Long Arm Statute are coextensive with those of constitutional due process or not, we can neither change the boundaries of our Long Arm Statute nor create new ones outside it. This is beyond our judicial powers.

With this in mind, I cannot agree with the statement in the majority opinion that "[a] finding of jurisdiction over a nonresident outside the confines of the Long Arm Statute 'would result in an unconstitutionally broad construction of' the statute. [Cit.]" Majority at pp. 3-4. This may or may not be so. The quotation is taken from a case in which it was held that there were insufficient contacts existing

between this state and the foreign defendant state in the particular circumstances to satisfy constitutional due process. Consequently the court in that case, *State of South Carolina v. Reeves*, 205 Ga. App. 656 (423 SE2d 32) (1992), refused to construe Georgia's Long Arm Statute as broadly as the appellee desired.

I am authorized to state that Presiding Judge Pope joins in this special concurrence.

McMURRAY, Presiding Judge, dissenting.

I fully agree with my colleagues in the majority that the Georgia Long Arm Statute, OCGA § 9-10-91, does not confer upon Georgia courts any authority to exercise personal jurisdiction over defendant Pratt & Whitney Canada, Inc. ("PWC"), the nonresident manufacturer of (allegedly) defective airplane engines, because this product liability action arises out of a plane crash in Kentucky and does not involve any tortious conduct or tortious consequences within the State of Georgia. PWC, however, contends that personal jurisdiction may be exercised over it *only* under the Georgia Long Arm Statute, OCGA § 9-10-91. This analysis fails to appreciate the distinction between a *general* jurisdiction and a *specific* jurisdiction. It is my view that PWC is subject to a general jurisdiction in the courts of Georgia due to its continuous and systematic commercial activities in Georgia. As the trial court did not err in denying PWC's OCGA § 9-11-12 (b) (2) motion, I respectfully dissent from the judgment of reversal.

In support of its jurisdictional challenge, PWC submitted the affidavit of C. J. C. Pascoe, its Vice President, Counsel, and Corporate Secretary, who deposed that PWC is a Canadian corporation with its principal place of business in Longueuil, Quebec; that PWC "does not have any offices or employees in the State of Georgia[; and that virtually] all aircraft engines manufactured by [PWC] are sold FOB Longueuil, Quebec, Canada." The Pascoe affidavit also indicates that former defendant Pratt & Whitney Aircraft of West Virginia, Inc. (West Virginia), a nonparty to this appeal, is wholly owned by United Technologies Corporation, a Delaware corporation that was never sued in this case. Similarly, the former defendant (now nonparty) P&WC Aircraft Services, Inc. ("Services"), which "has a facility in Atlanta, Georgia," is a Delaware corporation owned by United Technologies Corporation. The plane involved was owned by a Florida corporation and had been recently used for business in Milledgeville, Georgia. On the day in question, the plane took off from Milledgeville and landed in Birmingham, Alabama, and Orlando, Florida, before the fatal crash took place in Kentucky.

Plaintiffs responded with the subsequent deposition testimony of Christopher C. J. Pascoe, who explained that PWC is in business to "design, develop, manufacture and market [and support] small gas

turbine engines for the commuter and regional transport markets." United Technologies Corporation owns 98 percent of the shares of PWC. In addition to his offices with PWC, Mr. Pascoe is a director in each of the affiliated corporations, Services and West Virginia. He identified a PWC advertisement from an issue of Aviation Week referring to a service station in Atlanta, Georgia, "operated by P&WC Aircraft Services, Inc., which is an affiliated company." Mr. Pascoe affirmed that "all of the directors of . . . P&WC Aircraft Services, Inc. [are] officers of [PWC]." Mr. Pascoe also identified expense reports for PWC employees who had "visited the State of Georgia in 1990[, . . . generally] in connection with business. . . ." PWC had two engine customers in Georgia in 1990, and with one of them, Ayres Corporation, PWC "regularly [does] three to four million dollars of business a year[.]" PWC maintains in Georgia "no salesmen or distributors or consignees as such." PWC does, however, keep approximately $120,000 of tooling and parts on "consignment with Atlantic Southeast Airlines[ . . . ] as a customer service. . . ." This was not an effort to make additional sales but was intended "primarily to keep up an established relationship." PWC also ships spare parts to its sister corporation, Services, at the latter's service center in Atlanta. Expense reports indicate that PWC sent employees to Georgia for the purpose of customer relations, i.e., "keeping in touch with customers and suppliers. . . ." Specifically, PWC had "marketing people visiting customers in Georgia; some of them were purchasing personnel visiting suppliers in Georgia." Mr. Pascoe identified the deposition exhibit 13 as a 1990 "Ayres Corporation purchase order, . . . for PT6A-65AG engines." He affirmed that PWC "makes . . . the engine for the King Air 100 aircraft," the plane that crashed in this case. Contrary to PWC's contentions, however, the fact that it is incorporated under the laws of the Province of Quebec, Canada, with its principal place of business in Quebec, does not necessarily mean that it is subject to personal jurisdiction *only* under the Georgia Long Arm Statute.

"When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant. *Helicopteros Nacionales de Colombia v. Hall*, 466 U. S. 408, 414, fn. 9 (104 SC 1868, 80 LE2d 404). Conversely, "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising 'specific jurisdiction' over the defendant." *Helicopteros Nacionales de Colombia v. Hall*, 466 U. S. 408, 414, fn. 8, supra. See also *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 473, fn. 15 (105 SC 2174, 85 LE2d 528). It is my view that, the Georgia Long Arm Statute is applicable only when the State is

justifying its exercise of "specific jurisdiction" over the objection of a nonresident. According to the Supreme Court of Georgia, OCGA § 9-10-91 "requires that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction. Where . . . it is shown that no such acts were committed, there is no jurisdiction." *Gust v. Flint*, 257 Ga. 129, 130 (356 SE2d 513). "The Long Arm Statute applies solely to persons who were *nonresidents* of Georgia at the time the act or omission complained of occurred. [Cit.]" *Allstate Ins. Co. v. Klein*, 262 Ga. 599, 600 (422 SE2d 863). But the Supreme Court of Georgia has *never* held that the Long Arm Statute even applies to a "general jurisdiction" circumstance. "Corporate presence can only be manifested by corporate activity and therefore a minimum contacts analysis seems appropriate." *Humphrey v. Langford*, 246 Ga. 732, 733 (273 SE2d 22). Moreover, in a whole court decision, this Court recently affirmed the following proposition: " 'The *general* jurisdiction of State courts extends to transitory causes of action arising in another State, even though the plaintiff may not have been a resident of the State where the cause of action arose and the defendant may be a foreign corporation, so long as it is confined to the field from which the State itself is not excluded under the provisions of the United States constitution.' [(Emphasis supplied.)] *Louisville*[ *&c. R. Co. v. Meredith*, 66 Ga. App. 488 (18 SE2d 51), aff'd, 194 Ga. 106 (21 SE2d 101)]. A foreign corporation is present in any place where its officers or agents transact business in behalf of the corporation under authority conferred by it. *Reeves v. Southern R. Co.*, 121 Ga. 561, 565 (49 SE 674) (1905)." *Harry S. Peterson Co. v. Nat. Union Fire Ins. Co.*, 209 Ga. App. 585, 586 (2), 587 (434 SE2d 778). There is " 'no requirement of federal due process that either *prohibits* (a state) from opening its courts to (a cause of action not arising out of the corporation's activities in the state) or *compels* (a state) to do so. This conforms to the realistic reasoning in *International Shoe v. Washington* (cits.). (*Perkins v. Benguet Consolidated Mining Co.*, 342 U. S. 437, 444-446 (72 SC 413, 96 LE 485) (1952).)" (Emphasis in original.) *Allstate Ins. Co. v. Klein*, 262 Ga. 599, 601, fn. 3, supra.

In the case sub judice, the evidence is undisputed that PWC markets its products, including the type of defective engine involved in this case, to Georgia customers. PWC has prepositioned spare parts and material in Georgia and sends its employees to Georgia for ongoing "customer relations," notably on behalf of a single customer accounting for more than $3 million in annual sales. "Thus, we are not faced with an isolated transaction, but with extended activities which evidence an intention to continue business in this [S]tate. *Winston Corp. v. Park Elec. Co.*, 126 Ga. App. 489 (191 SE2d 340). The evidence in the instant case demanded a finding that [defendant PWC]

was 'doing business' in this [S]tate." *Aiken Asphalt Paving Co. v. Winn*, 133 Ga. App. 3, 4 (2), 5 (2b) (209 SE2d 700). "As a matter of federal due process, the business done by [PWC] in Georgia was sufficiently substantial and of such a nature as to permit Georgia to entertain the [product liability] cause of action against it, though the cause of action arose from activities [arguably] distinct from its activities in Georgia. *Perkins v. Benguet &c. Mining Co.*, 342 U. S. 437, 447-449 [supra]; [Cits.]" *Harry S. Peterson Co. v. Nat. Union Fire Ins. Co.*, 209 Ga. App. 585, 586 (2b), 588, supra. See also *Showa Denko K.K. v. Pangle*, 202 Ga. App. 245, 247 (2), 249 (414 SE2d 658).

Moreover, I note that personal service of process on PWC in Quebec, "in conformity with the Law of the Province of Quebec," is also sufficient under Georgia law. "All process may be served anywhere within the territorial limits of the state and, when a statute so provides, beyond the territorial limits of the state." OCGA § 9-11-4 (f). Canada is a signatory to the 1965 Hague Convention on Service Abroad of Judicial and Extra Judicial Documents, which is statutory authority to effect service of process beyond the territorial limits of Georgia. *Camp v. Sellers & Co.*, 158 Ga. App. 646, 647 (2) (281 SE2d 621). It follows that personal service abroad on a PWC vice president by an authorized Canadian process server was adequate service of process, since PWC is a foreign corporation "doing business" in Georgia but with no registered agent for service of process within the jurisdiction. OCGA § 9-11-4 (d); *American Photocopy Equip. Co. v. Lew Deadmore & Assoc.*, 127 Ga. App. 207, 210 (4) (193 SE2d 275). The trial court did not err in refusing to dismiss this complaint, either under OCGA § 9-11-12 (b) (2) or OCGA § 9-11-12 (b) (5). The majority would reverse on jurisdictional grounds, based (in my view) on a misapprehension that the Georgia Long Arm Statute, OCGA § 9-10-91, is the sole authority for exercising a general jurisdiction over this nonresident corporate defendant which enjoys more than $3 million in annual sales to Georgia customers but which has not registered to do business in this State.

Accordingly, the trial court's judgment should be affirmed.

DECIDED JULY 14, 1995 — ■

*Kilpatrick & Cody, Susan A. Cahoon, Craig E. Bertschi, Alston & Bird, G. Conley Ingram, Robert D. McCallum, Jr.*, for appellant. *Jason T. Schneider*, for appellees.