A97A1314, A97A1315. GOLDSTEIN v. GOLDSTEIN (two cases).
(494 SE2d 745)

ELDRIDGE, Judge.

Sandra Goldstein-Pfisterer[1] appeals from the judgment of the Superior Court of Cobb County holding her in contempt of the custody provisions of a Cobb County divorce decree and modifying those custody provisions. We affirm.

Divorced in 1995 in Cobb County, Georgia, Mitchell Goldstein and appellant Sandra Goldstein-Pfisterer were awarded joint custody of their daughter. The court gave Mr. Goldstein sole power to make decisions regarding schooling and designated his Cobb County residence as the child's primary residence. The court also set out a detailed schedule for shared physical custody.

Appellant repeatedly violated the custody order by, among other things, removing the child from school without permission, exceeding her vacation time with the child, failing to give the required notice of the days she intended to have the child, and allowing third parties unknown to the father to care for the child. On September 5, 1996, appellant surreptitiously removed the child from school and took her to Switzerland, where they have remained.

Upon arriving in Switzerland on September 6, appellant immediately obtained an ex parte "emergency" order from the District Court in Hinwil, Switzerland, granting appellant temporary sole custody of the child pending an inquiry into the child's well-being.[2]

On September 16, 1996, Goldstein filed two separate actions in Cobb Superior Court. Citing appellant's contumacious conduct and the child's best interests, he first petitioned the court to modify the custody provisions of the Cobb County divorce decree in order to

---

[1] Appellant married Andreas Pfisterer, a Swiss national, on August 28, 1996.

[2] The Swiss district court, following a subsequent hearing in which Goldstein was present, rejected Goldstein's plea to have the child returned. This ruling was appealed by Goldstein, and the Higher Court of the Canton of Zurich reversed the district court's ruling, finding that jurisdiction over the custody matter was proper only in Cobb County, Georgia. The higher Swiss court ordered appellant to return the child to Cobb County for a "restoration of the status quo ante" and in order to "leave it up to the judge at the location of the hitherto usual residence to decide about the custody." The record does not show that this has occurred.

award him exclusive custody of the child. He then filed an application to hold appellant in contempt of the custody provisions of the divorce decree. In both actions, he alleged appellant was a Swiss national and resided in Switzerland. Both actions were personally served on appellant in Switzerland pursuant to the international service provisions of the Hague Conventions. Appellant signed the service papers.

On September 17, Goldstein-Pfisterer filed an original complaint in Cobb Superior Court seeking to modify the custody provisions of the Cobb County divorce decree through the domestication of the District Court in Hinwil's temporary custody order of September 6.

Upon motion, the trial court consolidated all three custody-related actions and heard them together on November 25. Appellant appeared through her attorney. The trial court found appellant in contempt and ordered her to purge herself by returning physical custody of the child to Goldstein within 30 days. The Cobb Superior Court awarded physical custody of the child to Mitchell Goldstein and ordered the return of the child. *Held*:

1. Appellant Goldstein-Pfisterer challenges the Cobb County Superior Court's exercise of subject matter jurisdiction over Mitchell Goldstein's custody suit. She contends that pursuant to OCGA § 19-9-46 (a) of the Uniform Child Custody Jurisdiction Act ("UCCJA") (OCGA § 19-9-40 et seq.), pending custody proceedings in the District Court of Hinwil, Switzerland, prevented the exercise of the Cobb County Superior Court's subject matter jurisdiction.

(a) Cobb County Superior Court had subject matter jurisdiction over Goldstein's custody suit, since Cobb County, Georgia, is the "home state" of the child. OCGA § 19-9-43 (a). However, "[t]he [UCCJA] is applicable only to states, territories, or possessions of the United States, the Commonwealth of Puerto Rico, and the District of Columbia." *Richardson v. Richardson*, 257 Ga. 101 (2) (355 SE2d 664) (1987); *Binns v. Smith*, 251 Ga. 861 (310 SE2d 225) (1984). Accordingly, the jurisdictional provisions of the UCCJA do not apply in the *international* arena so as to confer jurisdiction upon an international tribunal or limit the exercise of otherwise proper jurisdiction in Georgia because of "pending" international proceedings.[3]

(b) Appellant's arguments regarding a jurisdictional "conflict" between the Swiss District Court of Hinwil's pending proceedings and the proceedings in Cobb County have been rendered moot by the Higher Court of the Canton of Zurich's determination that the proceedings in Hinwil were unlawful and the finding that jurisdiction

---

[3] OCGA § 19-9-63 states "[t]he general policies of [the UCCJA] extend to the international area." This refers to comity in the recognition and enforcement of an international custody *decree* which has been domesticated and does not address international proceedings. Moreover, no such international custody decree is before this Court in this appeal.

was proper in Cobb County. OCGA § 5-6-48 (b) (3).

2. Goldstein-Pfisterer is a resident of Switzerland and process was served in Switzerland. She contends that neither OCGA § 19-9-45 of the UCCJA nor the Georgia Long Arm Statute, OCGA § 9-10-91, provides authority for international service of process in Goldstein's contempt action so as to confer personal jurisdiction over her in Cobb County Superior Court.

Cobb County Superior Court had the authority to hear Mitchell Goldstein's contempt action. *Dyer v. Surratt*, 266 Ga. 220, 221 (466 SE2d 584) (1996); *Ashburn v. Baker*, 256 Ga. 507, 509 (350 SE2d 437) (1986). However, the Cobb Superior Court's judgments are not enforceable against Goldstein-Pfisterer unless the court has obtained personal jurisdiction over her. Id. In order for the Cobb Superior Court to bind Goldstein-Pfisterer to its judgments in personam, there must be (a) personal service or (b) a waiver of personal service upon her. Id. Herein, the Cobb County Superior Court obtained personal jurisdiction over Goldstein-Pfisterer in two ways:

(a) A "plaintiff, by voluntarily instituting . . . suit, gives the superior court of the county where it is so instituted jurisdiction of his person sufficient to answer all the ends of justice respecting the suit originally instituted, — such proceedings in equity being ancillary to or defensive of the pending suit." *Caswell v. Bunch*, 77 Ga. 504 (a) (1886); *Terhune v. Pettit*, 195 Ga. 793 (25 SE2d 660) (1943); *Ledford v. Bowers*, 248 Ga. 804, 806 (286 SE2d 293) (1982). The Civil Practice Act has not changed this principle. *Yount v. Mulle*, 266 Ga. 729 (470 SE2d 647) (1996); *Gaither v. Gaither*, 206 Ga. 808 (58 SE2d 834) (1950).

The day after appellee Mitchell Goldstein instituted his two separate actions in Cobb County against appellant for (1) contempt of the custody provisions of the divorce decree and (2) modification of the custody provisions of the divorce decree, *Goldstein v. Goldstein*, Civil Action Nos. 96-1-6974 and 96-1-6975, appellant filed her own, separate complaint against appellee in Cobb County to modify the Cobb County custody decree through the domestication of the Swiss temporary custody order, *Pfisterer v. Goldstein*, Civil Action No. 96-1-6998-24. Because the litigants and the issues in all three cases were the same, the trial court, upon motion, consolidated the actions. See OCGA § 9-11-42 (a). The trial court heard the claims together.[4]

Appellant's general appearance in an original suit and her submission therein to Cobb County jurisdiction waived all defenses in abatement under OCGA § 9-11-12 (b) (2), (3), (4), (5), and (7). Compare *Ashburn v. Baker*, supra at 509. Appellant voluntarily submit-

---

[4] Appellant does not enumerate as error the consolidation of the actions.

ted herself to the jurisdiction of the trial court for the purposes of the litigation of all issues legitimately raised in law or equity by her attempt to modify the original Cobb County custody order through the domestication of the Swiss temporary custody order. This litigation included the substance of appellee's claims regarding the Cobb County custody order. Mitchell Goldstein is allowed to assert such *affirmative* relief against appellant as is related to the defense against appellant's complaint.[5] *Global Fibers v. Foster*, 207 Ga. App. 1, 2 (427 SE2d 3) (1992); *Faulk v. Latham*, 194 Ga. App. 522 (391 SE2d 7) (1990).

Appellant cannot personally invoke the jurisdiction of the Cobb County Superior Court with regard to *her* custody complaint and then deny the same court's jurisdiction over her person with regard to appellee's custody complaint when (1) the parties, (2) the subject matter of the claims (custody), and (3) the *venue required by statute* (Cobb County) are the same for all. *Yount v. Mulle*, supra; see generally *Buckholts v. Buckholts*, 251 Ga. 58 (302 SE2d 676) (1983). The ends of justice would be ill served by such a "now you see me, now you don't" approach to in personam jurisdiction, which leaves one party legally at the mercy of another.

(b) Goldstein-Pfisterer was personally served process in Switzerland following the specific international service provisions of the Hague Conventions, so as to confer in personam jurisdiction on the Cobb County Superior Court. *Camp v. Sellers & Co.*, 158 Ga. App. 646, 647 (2) (281 SE2d 621) (1981).[6] This has been pled and proved from the inception of this case. Goldstein-Pfisterer signed for and admits such service. The Hague Conventions are binding in Georgia (as in all states) under the Supremacy Clause of the United States Constitution. "[A]ll Treaties made, or which shall be made, under the authority of the United States, shall be the supreme Law of the Land; and Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U. S. Const., Art. VI, Par. 2. We have previously held that "judicial notice *must* be taken of a treaty and . . . it will predominate over any statutory provision [or lack thereof] of the State of Georgia." (Emphasis supplied.) *Camp v. Sellers*, supra at 648. The Hague Conventions provide the authority, as well as the method, for service of process internationally. Id.

---

[5] Appellant filed a *complaint* for domestication, which is subject to answer and defenses. *Okekpe v. Commerce Funding Corp.*, 218 Ga. App. 705, 707-708 (463 SE2d 23) (1995) (Beasley, C. J., concurring specially).

[6] *Camp v. Sellers*, supra, involved the same international service provision of the Hague Conventions as does the instant case: Service Abroad of Judicial & Extrajudicial Documents, 1969 WL 22798 (TIA) (each contracting nation *shall* proceed in conformity with the provisions of Articles 3 to 6).

As it is undisputed by any party that the international service provisions of the Hague Conventions were followed with regard to service of process on *both* of Mitchell Goldstein's Cobb County actions, service on appellant was perfected so as to confer in personam jurisdiction over her in the Superior Court of Cobb County as to both of those actions.

*Judgment affirmed. McMurray, P. J., Birdsong, P. J., and Ruffin, J., concur. Andrews, C. J., and Smith, J., concur in the judgment only. Beasley, J., concurs in part and dissents in part.*

BEASLEY, Judge, concurring in part and dissenting in part.

1. I concur in Division 1 insofar as it concludes that the trial court had subject matter jurisdiction of the custody and contempt actions.

2. I dissent with respect to Division 2 because (a) no consolidation took place, (b) no Georgia statute authorized service of process on the mother in Switzerland, and (c) the mother did not waive personal jurisdiction.

(a) On November 5 the father moved to consolidate all three actions (contempt, custody, and domestication), but the mother did not consent and no consolidation was ordered. OCGA § 9-11-42 (a) requires consent, as was emphasized in *Ford v. Uniroyal Goodrich Tire Co.*, 267 Ga. 226, 228-229 (476 SE2d 565) (1996). Thus the trial court could not have consolidated, and did not consolidate, the custody and contempt actions with the domestication action when it heard the father's two actions on November 25.

(b) The mother's second enumeration of error has merit. She asserts the court lacked personal jurisdiction over her in both the contempt and custody actions.

"While the Georgia court may have the authority to hear the contempt [and custody actions], its judgment is not enforceable against the non-resident defendant unless the court has obtained personal jurisdiction over the non-resident. [Cit.]" *Dyer v. Surratt*, 266 Ga. 220, 221 (3) (466 SE2d 584) (1996). The defendant has the burden of proving lack of personal jurisdiction. *Beasley v. Beasley*, 260 Ga. 419, 420 (396 SE2d 222) (1990); *Millard v. Millard*, 204 Ga. App. 399, 401 (1) (419 SE2d 718) (1992). Both parties agree, and the court found, that at the time of the filing of the contempt and custody actions the mother was a resident of Switzerland. Process in both actions was served in Switzerland, not Georgia.

"The courts of this state have no extra-territorial jurisdiction, and cannot make the citizens of foreign states amenable to their process, or conclude them by a judgment in personam, without their consent." (Citations and punctuation omitted.) *Ashburn v. Baker*, 256 Ga. 507, 509 (2) (350 SE2d 437) (1986). There are three prerequisites

for a court to have personal jurisdiction over a non-consenting, non-resident defendant: a Georgia statute must authorize the court to exercise personal jurisdiction over the defendant; a Georgia statute must authorize extra-territorial service of process on the defendant; and the defendant must have sufficient minimum contacts to Georgia to meet the test of *Intl. Shoe Co. v. Washington*, 326 U. S. 310 (66 SC 154, 90 LE 95) (1945). See generally *Straus v. Straus*, 260 Ga. 327, 328-329 (2) (393 SE2d 248) (1990), overruled on other grounds, *Scruggs v. Dept. of Human Resources*, 261 Ga. 587 (408 SE2d 103) (1991). The contempt and custody actions must be analyzed separately. See *Kemp v. Sharp*, 261 Ga. 600 (409 SE2d 204) (1991); *Ruckstuhl v. Corley*, 218 Ga. App. 660 (462 SE2d 795) (1995). Although OCGA § 9-10-91 (5) applies to certain financial aspects of divorce proceedings, "[i]t is a well-settled matter that the 1983 'domestic relations' amendment to the Long-Arm Statute (OCGA § 9-10-91 (5)) does not provide a means by which a Georgia court may obtain personal jurisdiction over a non-resident in a proceeding involving child custody or visitation. [Cits.]" *Dyer*, supra at 221 (3). This includes actions to modify a child custody order.

The Long-Arm Statute also provides no personal jurisdiction over defendants in contempt proceedings relating to child custody. "[A]lthough the superior court rendering a decree in a divorce action retains exclusive jurisdiction to enforce the provisions therein relating to custody of the minor children of the parties by attachment for contempt, even where subsequent to the rendition of the order the party sought to be adjudged in contempt has removed his or her residence to another jurisdiction, nevertheless, in order for the court to bind nonresidents by its judgments in personam there must be *personal service or waiver of personal service* upon such nonresidents." (Citations and punctuation omitted; emphasis in original.) *Ashburn v. Baker*, supra at 509 (2). This personal service must be in Georgia. Id.; see *Dyer*, supra at 222 (3) ("Because of the limited nature of Georgia's domestic relations long-arm statute, a non-resident parent alleged to be in contempt of the visitation provisions of a Georgia divorce judgment and who was served outside Georgia may divest the court of its power to enforce its judgment by timely asserting a defense of lack of personal jurisdiction"); *Ruckstuhl v. Corley*, supra at 660-661 (long-arm statute provides no personal jurisdiction in action for contempt of divorce decree).

On the other hand, OCGA § 19-9-43 of the UCCJA, as judicially construed, provides for personal jurisdiction over non-resident parents in petitions to modify custody and in contempt actions to enforce child custody orders where the provisions of that statute are met. *Lee v. Pace*, 252 Ga. 546, 547 (1) (315 SE2d 417) (1984) ("Jurisdiction over [the non-resident parent] as to custody is present because of the pres-

ence of the child within the jurisdiction. OCGA § 19-9-43"); *Ashburn,* supra at 508-510 (2) (court may have personal jurisdiction over non-resident parent in contempt action to enforce custody decree if UCCJA provisions met); *Baker v. Ashburn,* 179 Ga. App. 757, 758-759 (347 SE2d 660) (1986) (personal jurisdiction over non-resident parent may exist in custody modification action if UCCJA provisions met), aff'd, *Ashburn v. Baker,* supra; *Paul v. Paul,* 184 Ga. App. 217, 218 (361 SE2d 221) (1987) (in contempt action to enforce visitation rights in custody decree "jurisdiction and service over the [non-resident parent] were proper under the provisions of the [UCCJA]").

The relevant provision of the UCCJA provides that a Georgia court has jurisdiction to modify or enforce its custody decree where (a) Georgia had been the child's home state within six months before commencement of the proceeding, (b) the child is absent from Georgia because of its removal by a parent, and (c) a parent continues to live in Georgia. OCGA § 19-9-43 (a) (1) (B). When the contempt and custody actions were filed on September 16, 1996, these criteria were met. Until September 5, 1996, Georgia had been the child's home state. The child was absent because of the mother's unlawfully removing the child to Switzerland. And the father continued to live in Georgia. Thus, the UCCJA authorized the court to exercise personal jurisdiction over the non-resident mother in both the contempt and custody actions.

But no Georgia statute authorized the service of process on the mother in Switzerland. OCGA § 9-10-94, which authorizes service on non-residents of foreign countries, applies only to persons "subject to the jurisdiction of the courts of the state under Code Section 9-10-91." As discussed above, OCGA § 9-10-91 does not provide for personal jurisdiction over non-resident defendants in custody and related contempt actions. *Camp v. Sellers & Co.,* 158 Ga. App. 646 (281 SE2d 621) (1981), which speaks of service in a foreign country, is a tort action under the predecessor to OCGA § 9-10-91 (see Ga. L. 1970, pp. 443-445, § 1) in which the defendant challenged the *method,* not the *authority* for extra-territorial service in a foreign nation. The authority for international service in *Camp* came from OCGA § 9-10-94. Accordingly, *Camp* properly referred to a treaty[7] between the United States and several foreign countries that speaks to the method of foreign service if foreign service is authorized; *Camp* does not hold, nor could it, that the treaty gives a party in a Georgia action the authority to serve process in a foreign country. For Georgia state courts,

---

[7] Convention on the Service Abroad of Judicial & Extrajudicial Documents, Vol. 20 Part 1, U. S. Treaties & Other International Agreements 1969 (20 UST 361, TIAS 6638).

that is a matter exclusively within the province of the Georgia legislature.

The Supreme Court rejected a judicial rectification of the void in *Binns v. Smith*, 251 Ga. 861 (310 SE2d 225) (1984). The dissent in that case decried the safe haven created by the majority's recognition that the power to confer jurisdiction and to establish methods of achieving jurisdiction lies in the legislative and not in the judicial branch. Nor can a Swiss court confer jurisdiction on a Georgia court by its decrees.

We are left only with the extra-territorial service provision (OCGA § 19-9-45) of the UCCJA, which allows service of process on parents located in another state of the United States, *Paul*, supra at 218, but not in foreign nations. *Binns*, supra (no service allowed on parent in Canada); *Richardson v. Richardson*, 257 Ga. 101 (355 SE2d 664) (1987) (no service allowed on parent in Germany). Service on the mother in Switzerland was invalid, so the court lacked personal jurisdiction over her.

(c) Although not argued by the father on appeal, the majority finds the mother waived personal jurisdiction by filing the action to domesticate the Swiss decree of September 6. Filing an action in Georgia could be a factor to establish the minimum contacts required by *Intl. Shoe Co.*, supra, but does not constitute a waiver of the defense of lack of personal jurisdiction in other Georgia actions. See *Fralix v. Cordle*, 261 Ga. 224 (403 SE2d 793) (1991) (filing garnishment actions is evidence of minimum contacts); *Straus v. Straus*, supra at 328-329 (filing contempt action to enforce payment of alimony and child support is evidence of minimum contacts), overruled on other grounds, *Scruggs v. Dept. of Human Resources*, supra at 587. Cf. *Kemp v. Sharp*, supra at 601-602 (3) (filing counterclaim in UCCJA action does not constitute waiver of personal jurisdiction). But minimum contacts need not be addressed, for service in Switzerland was invalid and the mother did not waive the defense. See *Millard v. Millard*, supra at 403 (2).

DECIDED DECEMBER 5, 1997 —
RECONSIDERATION DENIED DECEMBER 17, 1997 — ▮▮▮▮▮▮

*Jesus A. Nerio*, for appellant.
*Richard L. Moore, Rebecca S. Walton-McFalls*, for appellee.