## A05A1013. ANDERSON v. DEAS.
### (615 SE2d 859)

PHIPPS, Judge.

Jonita Anderson and Raymond Deas had a child together in Maryland. After moving with the child to Georgia, Anderson filed a petition in the Superior Court of DeKalb County charging Deas with acts of family violence. She alleged that he had committed the criminal offenses of terroristic threats and stalking through statements he made to her and the child in telephone calls from another state. The court entered an ex parte temporary protective order enjoining Deas from harassing, intimidating, or contacting Anderson or the child.

After Deas moved to dismiss, the court conducted a hearing on whether any of the alleged acts of family violence would have occurred within the State of Georgia so as to give the court jurisdiction under the Family Violence Act (FVA).[1] The court later entered an order finding that no acts of family violence in Georgia had been alleged; concluding, therefore, that it lacked jurisdiction over nonresident Deas; and dismissing the protective order. We granted Anderson's application for discretionary appeal. Upon consideration, we affirm.

At the hearing, Anderson testified: Deas telephoned her from another state, their daughter answered the telephone, Deas immediately began screaming at her and accusing her of having lied to him, and he told her that when he next saw her he was going to beat her like he had never done before. The child became upset, dropped the phone, and started crying. She was afraid that Deas was going to come to her and Anderson's house and beat her, because she thought he knew where they lived. Anderson took the phone, and Deas repeated some of the things he had said to their daughter. As a result, Anderson called the police, who advised her to seek the protective court order.

Anderson further testified that before the call, Deas had been threatening to kill her and hurt the child and that, when they all lived in another state, she had been forced to make 911 calls because of his physical abuse of the child. According to Anderson, Deas telephoned again after entry of the protective order; she informed him of its existence; and he began yelling profanity and hung up the phone, but then called back and expressed regret for not having killed her.

1. Anderson contends that the superior court erred in not ruling that it has jurisdiction of the case under either the Uniform Child

---

[1] OCGA § 19-13-1 et seq.

Custody Jurisdiction and Enforcement Act (UCCJEA),[2] the federal Parental Kidnapping Prevention Act (PKPA),[3] or the FVA.[4]

(a) Anderson argues that the court was presented with an emergency requiring the exercise of UCCJEA jurisdiction under OCGA § 19-9-64 (a). We cannot agree.

Deas initially instituted a custody proceeding concerning the child in a Maryland court in August 2002. Later that year, Anderson initiated a custody proceeding in the Superior Court of Fulton County. The Fulton County proceeding was dismissed in view of the Maryland proceeding, which is still pending. In fact, a hearing in the Maryland proceeding was scheduled for December 2004, but it was continued because Anderson failed to appear. Shortly before the scheduled hearing date, Anderson instituted another custody proceeding in the Superior Court of DeKalb County. And she filed another petition for a family violence protective order in the Superior Court of Fulton County. Both the Superior Court of Fulton County in the family violence proceeding and the Superior Court of DeKalb County in the other custody proceeding found continuing child custody jurisdiction in Maryland and declined to exercise jurisdiction in Georgia.

OCGA § 19-9-64 (a), relied on by Anderson, provides that "[a] court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child or a sibling or parent of the child is subjected to or threatened with mistreatment or abuse." Here, the Superior Court of DeKalb County was fully authorized to decline to exercise emergency jurisdiction, on the ground that the child is in no immediate danger because she continues to be in Anderson's custody and that "there was no true emergency which required the Georgia court to exercise jurisdiction for the protection of the child."[5]

(b) It follows that the court also lacks jurisdiction under the PKPA, as it contains the same jurisdictional standards set forth in the UCCJEA.[6]

(c) As used in the FVA, the term "family violence" means the commission of "[a]ny felony"[7] (such as terroristic threats)[8] or various

---

[2] OCGA § 19-9-40 et seq.

[3] 28 USC § 1738A.

[4] Supra.

[5] *Rozier v. Berto*, 230 Ga. App. 427, 429 (496 SE2d 544) (1998).

[6] See *Wilson v. Gouse*, 263 Ga. 887, 889 (1) (441 SE2d 57) (1994).

[7] OCGA § 19-13-1 (1).

[8] OCGA § 16-11-37. As recognized in cases such as *Todd v. State*, 230 Ga. App. 849, 850 (1) (498 SE2d 142) (1998), any threat to commit a crime of physical violence upon another person that is communicated by telephone may be considered a terroristic threat.

other specified offenses which include stalking.[9] A person commits the offense of stalking by, among other things, contacting another person at a place without consent for the purpose of harassing and intimidating.[10] Contact by telephone is deemed to occur at the place where the communication is received.[11] But for proceedings under the FVA involving a nonresident respondent, the superior court where the petitioner resides or the superior court where an act involving family violence allegedly occurred has jurisdiction only "where the act involving family violence meets the elements for personal jurisdiction provided under paragraph (2) or (3) of Code Section 9-10-91."[12] OCGA § 9-10-91 is Georgia's Long Arm Statute. In pertinent part, it provides:

> A court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of [certain] acts [or] omissions . . . in the same manner as if he were a resident of the state, if . . . he: . . . (2) Commits a tortious act or omission within this state . . . ; (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

Even though Deas may have committed a tortious injury in this state, Georgia courts clearly do not have jurisdiction over him under paragraph (3) of the Long Arm Statute, because he has not met any of the other requirements set forth in paragraph (3). If jurisdiction exists at all, it must therefore exist under paragraph (2) of the Long Arm Statute on the ground that Deas committed a tortious act within this state. Linguistically, one would think that a tortious act was committed in the place where the act occurred. Some courts, however, have taken the position that a tortious act is a composite of both the act and damage, so that the tort may also be said to occur in the place of the resulting injury.[13] What is known as the "Illinois Rule" "rejects the argument that the term 'tortious act' refers only to act or conduct, separate and apart from the consequences thereof."[14] In contrast, under the rule referred to as the "New York Rule," "our Long Arm

---

[9] OCGA § 19-13-1 (2).
[10] OCGA § 16-5-90 (a) (1).
[11] Id.
[12] OCGA § 19-13-2 (b).
[13] See *Coe & Payne Co. v. Wood-Mosaic Corp.*, 230 Ga. 58, 59-60 (195 SE2d 399) (1973).
[14] Id. at 60.

Statute does not confer jurisdiction in a situation where a non-resident party commits [an act] outside the state with only the injurious consequences occurring within the state."[15]

In the well-known case of *Coe & Payne Co. v. Wood-Mosaic Corp.*,[16] our Supreme Court adopted the Illinois Rule. Later, however, the Court decided *Gust v. Flint*.[17] The allegation in *Gust* was that the defendants had committed an isolated tortious act outside the State of Georgia causing injury in the state. This court found the existence of long arm jurisdiction under paragraph (2) of OCGA § 9-10-91, though not under paragraph (3).[18] The Supreme Court reversed, holding that unrebutted evidence showed that the defendants had

> done none of the acts set forth in OCGA § 9-10-91 which must be done in order to subject them to personal jurisdiction of a Georgia court. We need not discuss the relative merits of a "New York rule" or an "Illinois rule." The rule that controls is our statute, which requires that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction. Where, as here, it is shown that no such acts were committed, there is no jurisdiction.[19]

Here, Deas allegedly placed the telephone calls from another state. Although the injurious consequences would have been felt in Georgia, it is undisputed that Deas never came to Georgia so as to commit an act here. Therefore, applying the Long Arm Statute as interpreted in *Gust* to the FVA, in accordance with the express terms of the FVA, we agree with the trial court that Anderson has alleged no acts by Deas giving the Georgia courts personal jurisdiction over him under the FVA.

2. Remaining issues raised by Anderson are moot.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED JUNE 20, 2005 — 

*Kindel C. Johnson*, for appellant.

---

[15] Id.

[16] Supra.

[17] 257 Ga. 129 (356 SE2d 513) (1987).

[18] *Flint v. Gust*, 180 Ga. App. 904, 906 (2) (351 SE2d 95) (1986).

[19] *Gust v. Flint*, supra at 130.

*Kresses, Benda, Lenner & Schatten, Kenneth H. Schatten, Tamar O. Faulhaber*, for appellee.