## A10A1346. HUGGINS v. BOYD.
(697 SE2d 253)

BLACKBURN, Judge.

In this case involving a permanent protective order prohibiting Jonathan Huggins from stalking Karen Boyd, Huggins appeals the trial court's denial of his motion to set aside the order, arguing that the trial court had no personal jurisdiction over him. Because it is undisputed that Huggins (a South Carolina resident) engaged in the stalking conduct only outside Georgia, and because it is further undisputed that Huggins engaged in no other conduct (persistent or otherwise) in Georgia, we must reverse.

Construed in favor of the trial court's bench trial findings, *Vrana v. Augusta-Richmond County*,[1] the evidence shows that for years, Huggins had from South Carolina repeatedly, in a harassing and intimidating manner, contacted Boyd. He similarly contacted her friends, students, and professional colleagues at Georgia Tech with critiques about Boyd, leading to the entry of a 12-month protective order by a Fulton County Superior Court enjoining such contact. When this order expired and Boyd took a position at the University of Georgia in Clarke County, Huggins renewed his harassing contacts via out-of-state e-mails (this time to Boyd's friends and colleagues at UGA), causing Boyd to petition for a permanent protective order in Clarke County Superior Court to enjoin such contacts. Huggins was served at his South Carolina address with the petition, with a copy of a temporary protective order, and with a notice of a hearing on the request for a permanent protective order scheduled for April 23, 2007.

Huggins did not appear at the April 23 hearing, and a permanent protective order against stalking was entered that same day, enjoining Huggins from contacting Boyd or her immediate family, and from contacting Boyd's friends and colleagues regarding Boyd. Two years later on May 4, 2009, Huggins moved to set aside the order on the grounds that the Clarke County court lacked personal jurisdiction

---

[1] *Vrana v. Augusta-Richmond County*, 295 Ga. App. 685, 685 (673 SE2d 3) (2009).

over him and that the order was overly broad. Following a hearing[2] at which it was undisputed (and which point Boyd concedes on appeal) that all of Huggins's e-mail contacts originated physically from outside Georgia, the court held that nevertheless, it had personal jurisdiction over Huggins because he had engaged in such a lengthy and persistent course of conduct in contacting Boyd and her friends and colleagues. Accordingly, the court denied the motion to set aside, giving rise to this discretionary appeal.

1. A motion to set aside is the proper vehicle for attacking a judgment on the basis that the trial court lacked jurisdiction over the person. OCGA § 9-11-60 (d) (1). "A judgment void because of lack of jurisdiction of the person or subject matter may be attacked at any time." OCGA § 9-11-60 (f). Where, as here, the material facts are undisputed and the question is one of law, we review the trial court's ruling de novo. *Guthrie v. Wickes.*[3]

2. The question of personal jurisdiction is a matter of statute. OCGA § 16-5-94, which authorizes a party to petition a court for a protective order against stalking, states in subsection (b) that "[j]urisdiction for such a petition shall be the same as for family violence petitions as set out in Code Section 19-13-2." OCGA § 19-13-2 (b) provides that "[f]or proceedings under this article involving a nonresident respondent, the superior court where the petitioner resides . . . shall have jurisdiction, where the act involving family violence meets the elements for personal jurisdiction provided for under paragraph (2) or (3) of Code Section 9-10-91." In pertinent part, paragraphs (2) and (3) of OCGA § 9-10-91 allow a Georgia court to exercise personal jurisdiction over a nonresident (as to a cause of action arising from any of the acts or omissions enumerated in that Code section) where that nonresident

> (2) Commits a tortious act or omission within this state . . . ; [or]
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor . . . engages in any other persistent course of conduct . . . in this state. . . .

Interpreting this statute, *Gust v. Flint*[4] found that because the undisputed evidence there showed that no acts of the defendants physically occurred within Georgia, the trial court properly dismissed the action. *Gust* explained that "[t]he rule that controls is our

---

[2] Huggins appeared at this hearing only through counsel.

[3] *Guthrie v. Wickes*, 295 Ga. App. 892, 892 (673 SE2d 523) (2009).

[4] *Gust v. Flint*, 257 Ga. 129, 130 (356 SE2d 513) (1987).

YALE LAW LIBRARY

statute, which requires that *an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction.* Where, as here, it is shown that no such acts were committed, there is no jurisdiction." (Emphasis supplied.) Id. Thus, "these limiting conditions may preclude a Georgia court from exercising personal jurisdiction over the nonresident to the fullest extent permitted by constitutional due process." *Innovative Clinical &c. Svcs. v. First Nat. Bank of Ames, Iowa.*[5]

In the context of accusations of stalking underlying a petition for a protective order, our Court in *Anderson v. Deas*[6] observed that a stalking "offense is deemed to occur at the place where the communication is received." See OCGA § 16-5-90 (a) (1) ("the place or places that contact by telephone, mail, broadcast, computer, computer network, or any other electronic device is deemed to occur shall be the place or places where such communication is received"). Nonetheless, our Court explained that "*the conduct* giving rise to the offense occurs at the place where the maker of the call speaks into the telephone. The effect is transmission of the voice along the telephone line or otherwise and receipt by its listener at the other end." (Emphasis supplied.) Id. Thus, we concluded that the respondent in that case, who placed all of his phone calls from another state, "did not engage in any conduct, persistent or otherwise, in Georgia, either when he made his daily phone calls to speak to his daughter or when he made the calls that allegedly threatened and harassed [the petitioner]." Id. at 893-894. Based on this conclusion, we held that the undisputed evidence showed that the trial court lacked personal jurisdiction over the respondent under either paragraph (2) or (3) of OCGA § 9-10-91, and we therefore affirmed the trial court's dismissal of the petition on this ground. *Anderson*, supra, 279 Ga. App. at 894.

*Anderson* is controlling. The conduct giving rise to the offense of stalking in this case occurred at the physical place where Huggins typed in and sent his e-mails. The effect was the transmission of the communications along electronic lines and receipt by Boyd and by her friends and colleagues at the other end. Therefore, Huggins "did not engage in any conduct, persistent or otherwise, in Georgia," when he sent the e-mails from out of state. Id. at 893-894. As we explained in our initial decision that *Anderson* affirmed on remand,

[a]lthough the injurious consequences would have been felt

---

[5] *Innovative Clinical &c. Svcs. v. First Nat. Bank of Ames, Iowa*, 279 Ga. 672, 674 (620 SE2d 352) (2005).

[6] *Anderson v. Deas*, 279 Ga. App. 892, 893 (632 SE2d 682) (2006).

in Georgia, it is undisputed that [respondent] never came to Georgia so as to commit an act here. Therefore, applying the Long Arm Statute as interpreted in *Gust*[, supra, 257 Ga. at 130, petitioner] has alleged no acts by [respondent] giving the Georgia courts personal jurisdiction over him. . . .

*Anderson v. Deas.*[7]

Boyd argues that, as held by the trial court, *Anderson* in both its permutations is distinguishable in that the trial court found that Huggins had over the years repeatedly sent harassing e-mails to Boyd and to her friends and colleagues, which established a "persistent course of conduct" that met the language of OCGA § 9-10-91 (3). Of course, that subsection states that personal jurisdiction is present where the nonresident "[c]ommits a tortious injury in this state caused by an act or omission outside this state if the tortfeasor . . . engages in any other persistent course of conduct . . . in this state. . . ." Boyd conveniently forgets that the "persistent course of conduct" must be "in this state." Id. See *Catholic Stewardship Consultants v. Ruotolo Assocs.*[8] ("[i]n order for this subsection to apply, the defendant must . . . engage in any other persistent course of conduct *in the state* . . .") (emphasis supplied); *Worthy v. Eller*[9] (no personal jurisdiction where evidence showed the defendant "has not engaged in any persistent course of conduct in this state"). Indeed, the modifier "other" in describing the "persistent course of conduct" reflects the legislative intent that the course of conduct is something other than the out-of-state tortious conduct that is causing the Georgia injury at issue, which out-of-state conduct is the only conduct that Boyd and the trial court point to when citing Huggins's long history of sending out-of-state harassing e-mails to Boyd or to other recipients in Georgia. Neither a party nor a trial court can circumvent the plain language of the statute, which according to the Supreme Court of Georgia requires that "an out-of-state defendant must do certain acts *within the State of Georgia* before he can be subjected to personal jurisdiction." (Emphasis supplied.) *Gust,* supra, 257 Ga. at 130.

Because it is undisputed that Huggins did no acts within the State of Georgia, we must reverse the trial court's denial of Huggins's motion to set aside the stalking permanent protective order. This moots Huggins's second enumeration regarding the alleged

---

[7] *Anderson v. Deas*, 273 Ga. App. 770, 773 (1) (c) (615 SE2d 859) (2005), aff'd on remand, *Anderson*, supra, 279 Ga. App. 892.

[8] *Catholic Stewardship Consultants v. Ruotolo Assocs.*, 270 Ga. App. 751, 758 (1) (608 SE2d 1) (2004).

[9] *Worthy v. Eller*, 265 Ga. App. 487, 488 (594 SE2d 699) (2004).

YALE LAW LIBRARY

overbroadness of the order.

*Judgment reversed. Bernes, J., concurs. Barnes, P. J., concurs fully and specially.*

BARNES, Presiding Judge, concurring fully and specially.

I concur in all that is said in the majority opinion, but write specially to note that having to set aside the protective order in this case is an unfortunate result of Georgia's unnecessarily restrictive Long Arm Statute, which under these facts requires both act and injury inside the state under OCGA § 9-10-91 (2). It is illogical that venue for the crime of stalking is the place where threatening e-mail is received, OCGA § 16-5-90 (a) (1), but that our courts cannot obtain personal jurisdiction over the stalker to issue a civil protective order unless the stalker engages in some additional "persistent course of conduct." OCGA § 9-10-91 (3). As noted by the authors of a 2007 law review article about Georgia's Long Arm Statute, Georgia

> residents are . . . not fully protected in their ability to obtain long-arm jurisdiction over nonresident defendants in cases arising in the context of [I]nternet activity. . . .The literal reading of subsection (2) by the Georgia state courts, which requires the tortious act to be committed within the state, severely limits the ability of injured residents to obtain personal jurisdiction over nonresidents who commit "cyber-torts."

"Extraterritorial Personal Jurisdiction for the Twenty-First Century," Van Detta and Kapoor, 3 Seton Hall Circuit Rev. 339, 381 (2007).

In this case, Boyd was associate dean at a South Carolina university who adjudicated a disciplinary action against Huggins in the mid-1990s.[10] When she left, Huggins sent her e-mail messages for eighteen months, one of which led Boyd to contact authorities at Huggins' school. After that, Huggins' correspondence became adversarial. In August 2003, a detective from Boyd's former university warned her that Huggins had made threats against her, and Huggins sent her an e-mail message indicating he had been watching her. As a result, Boyd obtained a twelve-month protective order for stalking, valid until September 2004 pursuant to OCGA § 16-5-94. Huggins consented to this order.

---

[10] The underlying facts are contained within Boyd's written statement to police in 2007, which she attached as an exhibit to her response to Huggins' motion to set aside the 2007 protective order. The parties agreed at a subsequent hearing that this statement was in evidence.

On February 7, 2007, Huggins sent a 65-page e-mail message to Boyd's faculty advisor and most of the male faculty and staff from her department, which led her to contact the police out of concern for her personal safety. She sought another protective order, based on this e-mail message and at least 17 other messages Huggins has sent to large groups of people about Boyd. In her statement, Boyd noted that while Huggins did not overtly threaten her in his e-mail messages, his references to murder along with her previous experience with him were "sufficient for [her] to worry and wonder." Boyd petitioned for and obtained a temporary protective order on February 20, 2007.

Huggins pled nolo contendere to stalking on March 20, 2008 and was ordered not to contact Boyd or send e-mail about her. That plea, of course, cannot be considered in determining whether Huggins had sufficiently minimum contacts with the State. OCGA § 17-7-95 (c) ("Except as otherwise provided by law, a plea of nolo contendere shall not be used against the defendant in any other court or proceedings as an admission of guilt or otherwise or for any purpose.").[11]

Huggins was served with the petition for a protective order but did not appear personally at a hearing on April 23, 2007, after which the trial court granted Boyd a stalking permanent protective order against Huggins. In May 2009, Huggins petitioned the court to set aside or amend the protective order, arguing that the trial court had no personal jurisdiction over him, a nonresident. He also argued that the order was overbroad.

At a hearing on the motion to set aside the protective order, the trial court noted that the record included no transcript of the evidence it had heard before it issued the protective order Huggins sought to set aside, and could not remember independently what evidence it considered. The court noted that, under the reasoning of *Anderson v. Deas*, 275 Ga. App. 770 (615 SE2d 859) (2005), a person could be charged with aggravated stalking from a remote location for sending e-mail messages but could not be restrained civilly from making threatening communications in the future. The trial court determined that the nature and extent of the contacts in this case were different from the telephone calls addressed in *Anderson v. Deas*, and denied Huggins' motion to set aside the permanent protective order.

As noted by the majority, no one disputes that all of Huggins' conduct occurred outside of Georgia. Thus, based on our holding in

---

[11] Huggins apparently also moved to vacate or amend his nolo plea, but the record does not indicate the result of that motion.

*Anderson v. Deas* that, although the injury occurred here, the act of making a call or sending e-mail took place outside the state, we do not have civil jurisdiction over Huggins under our Long Arm Statute. Accordingly, I concur fully in the majority's reasoning and result.

DECIDED JUNE 22, 2010.

*Howell S. Basham*, for appellant.
*Bryan K. Webb*, for appellee.