**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 11, 2014**

# In the Court of Appeals of Georgia

A14A0596. CHATMAN v. PALMER.

BOGGS, Judge.

Kimberly Chatman appeals from the trial court's order transferring primary physical custody of her son to his father, David Palmer. She also appeals from the trial court's order granting Palmer's motion for attorney fees and litigation expenses under OCGA § 9-15-14. Because the trial court was without authority to modify permanent custody under a family violence protective order, we reverse. We also vacate the award of attorney fees and remand this case to trial court to reconsider the award in light of our reversal.

The record reveals that the child was born on August 15, 2003, and that Palmer had legitimated him.[1] In a 2007 "Final Order of Custody and Visitation," the trial court

---

[1] Chatman and Palmer were never married.

awarded the parties joint legal custody of the child with Chatman being named the primary physical custodian. The order also set forth Palmer's schedule of visitation.

The present action began with Chatman's June 22, 2009 petition for a protective order that alleged Palmer pushed her, grabbed her by the throat, and choked her. She asserted that she was in fear of Palmer because he had threatened her and others, had "alcohol or drug problems," dangerous weapons, a criminal record, and had been violent in the presence of children. The trial court entered a "Family Violence Ex Parte Protective Order" enjoining Palmer from approaching Chatman or the child and ordering that Palmer not have any contact with the child. Following a hearing, the trial court entered a "Family Violence Twelve Month Protective Order," effective until July 2, 2010, which allowed Palmer only supervised visits with the child once a person to supervise was found and agreed upon.

On November 10, 2010, following a hearing on Chatman's request for a permanent protective order, the court entered a "Three Year/Permanent Family Violence Protective Order" pursuant to OCGA § 19-13-4 (c), awarding Chatman full custody of the child and providing that Palmer could have no visitation with the child until a therapist "states in writing that [the] child can visit without fear of physical or

mental injury." The therapist arranged supervised visits with Palmer and the child beginning on April 22, 2011.

In November of 2011, Chatman moved to temporarily suspend the supervised visitation alleging that the therapist had left the child unsupervised with Palmer, and during that time Palmer hit the child. Palmer denied the allegations in his response to the motion and characterized Chatman's motion as "strategic and retaliatory." In December 2011, the trial court appointed the child a guardian ad litem to assist the court in "reaching relevant decisions concerning custody, visitation, maintenance, education and general welfare of the child raised in this action."

In February 2012, Chatman filed a motion for contempt of the three-year/permanent protective order. Palmer responded and filed his own motion for contempt. The trial court held a hearing on those motions over the course of two days (April 9th and 13th, 2012), and on April 13, 2012, it entered a "Temporary Order of Custody and Visitation" to remain in effect until the expiration of the "Three Year/Permanent Family Violence Protective Order" or other order of the court. This temporary order granted the parties joint custody of the child and named Chatman primary physical custodian (as was originally awarded in the 2007 final order of custody). In finding that there was no credible evidence that Palmer was violent toward

3

the child, the court granted Palmer "transitional supervised visitation" requiring supervised visitation for only the two scheduled visits following the date of the order, with the remaining visitation to be unsupervised at Palmer's home.

In September 2012, Chatman filed an "Emergency Ex-parte Motion for Suspension or Modification of Visitation" as set forth in the April 2012 temporary order. She asserted that the child's psychiatrist was of the opinion that "it is not in the child's best interest to continue unsupervised visitation with his Father," and that such continued unsupervised visitation would pose a safety risk to the child because of the child's allegations of "verbal, emotional, and physical abuse" by Palmer. The trial court declined to hold an emergency hearing on the motion, but nevertheless conducted a hearing on "any and all non-jury issues" on October 30, 2012 (continued to November 27). The hearing included the testimony of Chatman, Palmer, the child's psychiatrist, the guardian ad litem, a psychologist, a family consultant, and a witness for Palmer.

On November 27, 2012, the trial court entered a temporary order granting Palmer full temporary custody of the child and prohibiting Chatman from having any visitation with the child pending the entry of the court's final order. On December 11, the trial court entered a "Final Order of Custody and Visitation" awarding Chatman and Palmer joint physical custody of the child and naming Palmer the primary physical

4

custodian. The court noted that "its earlier findings of family violence may have been improvident," that Chatman "seeks every opportunity to purposely interfere with the relationship between [Palmer] and [his] son," and that the only remedy is a change in custody. It is from this order that Chatman appeals.

1. Chatman asserts that the trial court erred in "changing custody in this action for modification of visitation in a permanent protective order." Chatman is correct that in order to seek a change in primary physical custody, pursuant to OCGA § 19-9-23 (a), Palmer was required to file an action in DeKalb County, Chatman's county of residence. See *Jones v. Jones*, 256 Ga. 742, 743 (352 SE2d 754) (1987). That Code section provides that (except in cases not applicable here) "after a court has determined who is to be the legal custodian of a child, any complaint seeking to obtain a change of legal custody of the child shall be brought as a separate action in the county of residence of the legal custodian of the child." Moreover, a complaint for custody cannot be made as a counterclaim or in "response to any other action or motion seeking to enforce a child custody order." OCGA § 19-9-23 (c). "This statute was enacted by the Legislature to curtail the practice criticized in *Matthews v. Matthews*, 238 Ga. 201 (232 SE2d 76) (1977) allowing the noncustodial parent to relitigate custody in his own

jurisdiction." (Citation omitted.) *Kapur v. Roach*, 272 Ga. 767, 768 (534 SE2d 420) (2000).

Although Palmer did not file a separate action for custody, the trial court, citing *Daust v. Daust*, 204 Ga. App. 29 (418 SE2d 409) (1992), found that Chatman waived any defense of lack of jurisdiction or improper venue. Id. at 31. But even assuming that Palmer properly asserted a change in custody[2] and that Chatman waived the defenses of lack of jurisdiction and improper venue, the trial court was without authority to make a change in permanent custody in this temporary protective order action.

---

[2] On April 13, 2012, in the hearing on visitation under the three-year/permanent protective order, Palmer testified that he wanted "joint physical custody today." In the November 2013 hearing, Chatman's counsel stated that Palmer's counsel "has now raised the issue that they are moving forward on their motion trying to seek a change of primary physical custody." But Palmer's counsel made no such motion nor was there a petition for a change in permanent custody pending.

It appears from the record that the trial court also believed a change in permanent custody was properly before it. At the conclusion of the April 13th hearing on visitation, the court noted that the guardian ad litem's report stated that "the father says he wants full custody." The court explained that it was tempted to give Palmer full custody "because that's how strongly I believe that the mother has done her best to alienate the father and son." In awarding Palmer primary physical custody of the child, the court relied heavily on the testimony of a psychologist who did not examine the child but concluded that a change in custody is a remedy in the case of a child suffering from Parental Alienation Syndrome.

6

This action was initiated not by a complaint or petition from a final order determining permanent custody,[3] but by a petition for a temporary protective order. The trial court entered a temporary protective order, and later a permanent protective order, based on allegations of family violence. The court was authorized to do so pursuant to OCGA § 19-13-4.[4] Subsection (a) provides that "to bring about a cessation of acts of family violence," the trial court may, upon petition, grant a protective order. The court's order may:

> (1) Direct the respondent to refrain from such acts;
> (2) Grant to a party possession of the residence or household of the parties and exclude the other party from the residence or household;
> (3) Require a party to provide suitable alternate housing for a spouse, former spouse, or parent and the parties' child or children;
> (4) Award temporary custody of minor children and establish temporary visitation rights;

---

[3] See, e.g, *Andersen v. Farrington*, 291 Ga. 775 (731 SE2d 351) (2012) (action for contempt of divorce decree that set forth permanent custody award and appended motion for change in custody); *Kapur*, supra, 272 Ga. at 767 (action for contempt of divorce decree that set forth permanent custody award and petition for sole custody); *Daust*, supra (action for contempt of order that set forth permanent custody award).

[4] OCGA § 19-13-2 provides that the superior court of the county where the respondent resides shall have jurisdiction over petitions seeking relief from family violence. As Palmer resided in Cobb County, the superior court of that county properly had jurisdiction over the matter.

7

(5) Order the eviction of a party from the residence or household and order assistance to the victim in returning to it, or order assistance in retrieving personal property of the victim if the respondent's eviction has not been ordered;

(6) Order either party to make payments for the support of a minor child as required by law;

(7) Order either party to make payments for the support of a spouse as required by law;

(8) Provide for possession of personal property of the parties;

(9) Order the respondent to refrain from harassing or interfering with the victim;

(10) Award costs and attorney's fees to either party; and

(11) Order the respondent to receive appropriate psychiatric or psychological services as a further measure to prevent the recurrence of family violence.

OCGA § 19-13-4 (a). Subsection (c) gives the court discretion to convert a temporary order to a permanent one upon motion of the petitioner and following a hearing.

As subsection (a) (4) provides, the trial court may award *temporary* custody or establish *temporary* visitation rights. See, e.g., *Baca v. Baca*, 256 Ga. App. 514, 516-517 (2) (568 SE2d 746) (2002). OCGA § 19-13-4 contains no provision for the award of *permanent* custody, however, and as the trial court acknowledged, "generally the Family Violence Act cannot be the vehicle used to modify custody." We find no

authority allowing for a change in permanent custody under these circumstances. Had the legislature intended to include a change in permanent custody in the list of options available to the trial court under OCGA § 19-13-4 (a), it could have done so specifically. We therefore hold that the court was without authority to modify permanent custody under the protective order notwithstanding any waiver of personal jurisdiction and venue. Cf. *Perlman v. Perlman*, 318 Ga. App. 731, 731-733 (1) and 738 (4) (734 SE2d 560) (2012) (father filed petition for change in custody as well as petitions for family violence protective orders; discussing distinction between remedy in custody action and remedy of protective order).

The trial court did have the discretion, however, to modify the permanent protective order or to terminate the order returning the parties to the status quo of the 2007 final order of custody. See, e.g., *Mandt v. Lovell*, 293 Ga. 807, 809-810 (750 SE2d 134) (2013) (trial court has discretion to decrease duration of protective order when appropriate and to terminate such order when material change in circumstances occurs). While the court may have correctly concluded that there was evidence of a material change in condition affecting the welfare of the child, it simply cannot grant a change in permanent custody based on that factual finding, but must rather exercise

9

its broad discretion pursuant to the permanent protective order. If Palmer still desires a change in permanent custody, he must file a separate action in DeKalb County.

We therefore vacate that portion of the trial court's order awarding Palmer primary physical custody of the child, and remand this case for an order on the matter consistent with this opinion.

Chatman's remaining argument is rendered moot by our reversal here.

2. Chatman also challenges the trial court's award of attorney fees to Palmer. Palmer sought attorney fees and litigation expenses pursuant to OCGA §§ 19-9-3, 19-6-2, and 9-15-14. Following a hearing, the trial court awarded fees pursuant to only OCGA § 9-15-14, finding that Chatman's "claims and positions asserted lacked any justiciable issue of law or fact that could be reasonably believed," and that Chatman "brought these allegations before the Court for purposes of harassment of [Palmer]."[5]

While the trial court is authorized to award fees under OCGA § 9-15-14 for frivolous claims and defenses in an action involving a family violence protective order, see generally *Dalenberg v. Dalenberg*, 325 Ga. App. 833, 834-836 (1) (755 SE2d 228) (2014), and may have properly done so here, it incorporated by reference its final order

---

[5] We note that Palmer did not seek fees pursuant to OCGA § 19-13-4 (a) (10) (award of costs and attorney fees pursuant to a protective order).

10

of custody, and we have held in Division 1 that the court was without authority to make a permanent custody ruling in this case. Under these circumstances, out of an abundance of caution, we vacate the award of attorney fees and remand to the trial court for further consideration in light of our holding in Division 1.

*Judgment reversed in part, vacated in part, and case remanded with direction.*
*Barnes, P. J., and Branch, J., concur.*