**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 19, 2015**

# In the Court of Appeals of Georgia

A15A0978. PRABNARONG v. OUDOMHACK.

PHIPPS, Presiding Judge.

In this appeal, we review the question of whether a Georgia trial court properly exercised emergency jurisdiction when it, in contravention of an order issued by a court in the state of Washington awarding physical custody of a minor child to the child's father, awarded temporary custody of the child to the child's maternal uncle after the death of the child's mother (who had been the primary custodial parent and had resided with the child in Georgia at the time of her death). Because there was no basis for the trial court's exercise of emergency jurisdiction, we reverse.

The pertinent facts of this appeal are undisputed. The mother of the minor child, V. P.,[1] and the child's father, Sirichai Prabnarong, were divorced by decree

---

[1] V. P. was born on June 12, 2001.

entered in a Washington court on December 20, 2005. Pursuant to a parenting plan the court incorporated into the divorce decree, the mother was awarded primary physical custody of V. P., and later moved with V. P. to Georgia. The mother remarried and had another child. V. P. resided in Georgia for nine years before her mother died on October 15, 2014; she lived with her mother and stepfather. V.P's maternal grandparents and uncle resided nearby in Georgia. After the divorce (and before the mother's death), the father had continued to live in Washington, and had exercised visitation with V. P. during the child's summer breaks from school.

In November 2014, after V. P.'s mother died, V. P.'s father obtained from the same Washington court that had issued the divorce decree and parenting plan an order awarding him primary physical custody of V. P. Days later, V. P.'s maternal uncle filed in the Superior Court of Gwinnett County a motion for an emergency hearing, and a petition requesting that the divorce decree and parenting plan that had been entered in Washington in 2005 be registered in Georgia, and that the Georgia court modify the parenting plan by ordering that he be awarded joint legal and primary physical custody of V. P., "with [V. P.'s father] continuing to have summer parenting time as has been the case since 2005." The uncle asserted in his petition that V. P.'s father "has threatened to mistreat [V. P.] by removing her from everything she knows,

2

including her stepfather, younger sister, aunts, uncles, maternal grandparents, friends, teachers and classmates." The uncle presented as an exhibit to his petition an "Affidavit of Election of [V. P.]" wherein then 13-year-old V. P. expressed her desire to "visit with [her father], but stay in Georgia." V. P. averred that she elected to live with her stepfather and uncle on a permanent basis, and she acknowledged that her uncle was asking the court to order that he be her permanent custodian, and that her father have visitation rights. V. P. attached to her affidavit two handwritten documents – one entitled, "Why I want to stay in GA," and the other entitled, "Why I don't want to stay in WA."

V. P.'s father responded to the uncle's petition by filing in the Gwinnett action a pleading entitled, "Registration of Foreign Judgment . . . and Motion to Enforce." He sought to register the custody order he had obtained from the Washington court after V. P.'s mother had died, which order awarded him primary physical custody of V. P.

After a hearing on the matter, the Gwinnett court entered an order which provided that the Washington divorce decree "is hereby made the Order of this Court." In the same Gwinnett order, the court recognized the November 12, 2014 Washington order that the father had presented for registration, which order awarded

3

primary physical custody of V. P. to her father; and the court stated that "[i]t is undisputed that upon the Mother's death, legal custody of the Child is with the [Father]." Nonetheless, the court found that it had emergency jurisdiction pursuant to OCGA § 19-9-64 (a) "based upon the Affidavit of Election of [V. P.] and the handwritten attachments thereto, that [V. P.] has been subjected to or threatened with mistreatment or abuse." The court then ordered that V. P. "shall remain in the physical custody and care of the [uncle] pending transfer of the case to the Juvenile Court of Gwinnett County and appointment of a guardian to determine the proper permanent physical custodian of [V. P.]."

Upon the father's appeal of that order, he enumerates two errors. First, he contends that "[t]he trial court erred by not enforcing the foreign judgment of child custody [he had] registered with the Gwinnett County Court." But, as the Gwinnett court recognized the Washington order which placed primary custody of V. P. with her father, the pertinent issue appears to be, as the father contends in his second enumerated error, whether "[t]he trial court erred by exercising temporary emergency

4

jurisdiction . . . where the circumstances and well-being of the child did not demand immediate action."[2]

"Jurisdiction is a question of law to which appellate courts apply a de novo standard of review."[3] "Except as otherwise provided in Code Section 19-9-64, a court of this state may not modify a child custody determination made by a court of another state,"[4] unless certain circumstances exist that are not pertinent here. Pursuant to OCGA § 19-9-64 (a), "[a] court of this state has temporary emergency jurisdiction [to modify a child custody determination made by a court of another state] if the child is present in this state and . . . it is necessary in an emergency to protect the child because the child . . . is subjected to or threatened with mistreatment or abuse."

---

[2] See OCGA § 19-9-86 (b) ("A court of this state shall recognize and enforce, but may not modify, except in accordance with Part 2 of this article, a registered child custody determination of a court of another state.").

[3] *In the Interest of M. M.*, 315 Ga. App. 673, 674 (1) (727 SE2d 279) (2012) (footnote omitted); see generally *Zinkhan v. Bruce*, 305 Ga. App. 510, 511 (699 SE2d 833) (2010) ("Since the superior court's decision as to whether it had subject matter jurisdiction to consider the . . . petition for custody was based on an application of law to undisputed facts, we apply a de novo standard of review.") (citation and punctuation omitted).

[4] OCGA § 19-9-63.

The handwritten documents V. P. attached to her affidavit provided the following. In the document entitled, "Why I want to stay in GA," V. P. stated that she desired to remain in Georgia because she felt safe here, she needed to "be there for" her younger sister, she loved the school she attended, she made good grades in school, and she knew everybody at school. V. P. expressed concern that the credits she was earning for high-school-level courses would not transfer to any school she would attend in Washington.

In the document entitled, "Why I don't want to stay in WA," V. P. stated that she did not want to reside in Washington because it was not safe there. She stated that "once when [she] was about 6 or 7 years old," her father permitted someone she did not know to supervise her. V. P. stated that on another occasion, her father had left her at a public swimming pool in the sole care and custody of a cousin; V. P. did not state the age of that cousin. And finally, V. P. stated that sometimes she feared her stepbrother because he kept guns and knives, and he smoked in his room and drank.

In *Rozier v. Berto*,[5] this court held that there was no true emergency which required the Georgia court to exercise emergency jurisdiction pursuant to OCGA § 19-9-64 (a) for the protection of the child, where the child was in the physical custody

[5] 230 Ga. App. 427 (496 SE2d 544) (1998).

of the non-custodial parent who sought the temporary order pursuant to 19-9-64 (a), and that parent's version of the facts (that the child was filthy, improperly clothed, and generally neglected in the custodial parent's care) did not present an "immediate danger"[6] to the child. In *Jackson v. Sanomi*,[7] the Supreme Court of Georgia, citing *Rozier*, held that the non-custodial mother's allegations that her child feared returning to the foreign country where the child resided with his father (the custodial parent) because of ongoing violence there did not meet the requisite criteria pursuant to OCGA § 19-9-64 (a) and the Georgia trial court was not authorized to exercise temporary emergency jurisdiction to contravene an order entered by a foreign state that had awarded physical custody of the child to the father.[8]

And in *Anderson v. Deas*,[9] where a mother sought to invoke the jurisdiction of a Georgia court pursuant to OCGA § 19-9-64 (a), this court held that the trial court was fully authorized to decline to exercise emergency jurisdiction, on the ground that

---

[6] Id. at 429.

[7] 292 Ga. 888 (742 SE2d 717) (2013).

[8] Id. at 890.

[9] 273 Ga. App. 770 (615 SE2d 859) (2005).

7

the child was in no "immediate danger"[10] because she continued to be in the custody of the parent who sought the temporary order pursuant to OCGA § 19-9-64 (a), and that "there was no true emergency which required the Georgia court to exercise jurisdiction for the protection of the child."[11] The mother in *Anderson* had alleged that the father had been threatening to kill the mother and harm the child, and that during a subsequent phone conversation, the father screamed at the child and threatened to beat the child the next time he saw her.[12]

In this case, there was no true emergency which required the Georgia court to exercise jurisdiction for the protection of V. P. The child, who was 13 years old at the commencement of this (Georgia) custody case, was in the physical custody of her uncle who was petitioning for a change of custody, and was in no immediate danger under any version of the facts alleged in her affidavit and attachments, i.e., alleged neglect by her father when she was six or seven years old and fear of her stepbrother because he kept weapons and he smoked and drank.[13] Nor are we persuaded that, as

_____

[10] Id. at 771 (1) (a).

[11] Id. (punctuation and footnote omitted).

[12] Id. at 770.

[13] See generally *Jackson*, supra; *Anderson*, supra at 770-771; *Rozier*, supra.

8

the uncle asserts, certain consequences of V. P. going to live with her father in Washington – that she would no longer live with her stepfather or half sister, or near her maternal relatives and friends in Georgia – amounted to an act of mistreatment or abuse by V. P.'s father and were sufficient to invoke the trial court's emergency jurisdiction pursuant to OCGA § 19-9-64 (a).

"The general rule is that the court where the parent with legal custody resides has the exclusive right to award change of custody."[14] Given that the Georgia court recognized the Washington order which awarded the father legal custody of V. P. and that V. P.'s allegations of neglect by her father and fear of her stepbrother arose from acts that had allegedly occurred and circumstances that had allegedly existed in Washington, the uncle's claims should be presented in Washington.[15]

Notably, the order from which the father appeals runs afoul of another statutory requirement. If a previous child custody determination exists, as in this case, "the

---

[14] *Matthews v. Matthews*, 238 Ga. 201 (232 SE2d 76) (1977) (citations omitted); see *Chatman v. Palmer*, 328 Ga. App. 222, 224 (1) (761 SE2d 616) (2014); OCGA § 19-9-23 (a).

[15] See generally *Rozier*, supra at 429 (although father contended that his child may have been neglected by the mother who was the custodial parent, such neglect, if it existed, arose and was discovered by the father in the state where the mother lived with the child, and the father could have presented his claims in that state).

9

temporary order *must* specify a period that the court considers adequate to allow the person seeking the temporary order to obtain an order from the court maintaining continuing jurisdiction over the custody of the child[ ]."[16] "The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires."[17] Here, the trial court failed to specify in its order any period of time within which the uncle must obtain an order from the Washington court.

*Judgment reversed. Doyle, C. J., and Boggs, J., concur.*

---

[16] *Taylor v. Curl*, 298 Ga. App. 45 (679 SE2d 80) (2009) (emphasis supplied). See OCGA § 19-9-64 (c).

[17] OCGA § 19-9-64 (c).