**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 11, 2024**

# In the Court of Appeals of Georgia

A24A1131. IN THE INTEREST OF D. H., a child.

MILLER, Presiding Judge.

In this child custody case, the mother and the child have been residents of Georgia at all pertinent times, but the child was taken into temporary protective custody while visiting Alabama with the mother. An Alabama court subsequently found the child to be dependent. The Alabama court transferred the case to a Georgia court, where the mother filed a motion to vacate the Alabama court's finding of dependency based on a lack of subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). The Georgia court denied the motion to vacate, and the mother filed this appeal. Because we conclude that the temporary emergency jurisdiction of the Alabama court did not authorize it to find the

child dependent after he was placed in protective custody, we reverse the denial of the motion to vacate.

We review a question of subject matter jurisdiction under the UCCJEA de novo. *Kogel v. Kogel*, 337 Ga. App. 137, 140 (786 SE2d 518) (2016).

Jennifer Holland is the mother of D. H., a four-year-old boy. On July 2, 2022, Holland gave birth to another son, T. W., and she tested positive for marijuana at the time of birth. Because of the positive drug test, the Georgia Department of Human Services "bec[a]me involved with the family," although to what extent it did so is not clear from this record. On July 12, 2022, Holland was visiting Marshall County, Alabama, when she woke up, found T. W. unresponsive, and called for emergency medical assistance. T. W. was transported to a hospital where he was pronounced dead.[1] Holland admitted to smoking Delta-8, and D. H.'s car seat smelled heavily of marijuana. Marijuana and alcohol were found in the Alabama rental residence of Holland and her boyfriend. Holland's boyfriend was visibly intoxicated at the hospital and tested positive for THC and ethyl glucuronide.

---

[1] An autopsy indicated that the cause of death was undetermined and that the suspected manner of death was natural. According to Holland, T. W. died from SIDS or Sudden Infant Death Syndrome.

On the day of T. W.'s death, the Marshall County Department of Human Resources ("the Marshall County DHR") filed a petition in the Marshall County Juvenile Court alleging that D. H. was dependent due to the circumstances surrounding T. W.'s death and the substance abuse of Holland and her boyfriend. The Marshall County DHR took D. H. into protective custody or shelter care upon the filing of the petition.[2]

On July 14, 2022, the Alabama court held a shelter care hearing. At the conclusion of the hearing, the Alabama court ordered that D. H. remain in protective

---

[2] Alabama law defines "shelter care" as "[t]he temporary care of children in group homes, foster care, relative placement, or other nonpenal facilities." Ala. Code § 12-15-102 (25). D. H. was apparently placed in shelter care pursuant to Ala. Code § 12-15-141, which provides:

> The juvenile court may enter an ex parte order of protection or restraint on an emergency basis, without prior notice and a hearing, upon a showing of verified written or verbal evidence of abuse or neglect injurious to the health or safety of a child subject to a juvenile court proceeding and the likelihood that the abuse or neglect will continue unless the order is issued. If an emergency order is issued, a hearing, after notice, shall be held within 72 hours of the written evidence or the next judicial business day thereafter, to either dissolve, continue, or modify the order.

custody or shelter care because (1) there was no suitable person able and willing to provide for his care and supervision, and (2) he would face a real and substantial threat of serious harm if he was released from protective custody. The Alabama court set the matter for an adjudicatory hearing on August 9, 2022. On August 5, 2022, the Marshall County DHR submitted a report to the Alabama court indicating that D. H. was doing well but recommending that he remain in protective custody and be found dependent.

On August 17, 2022, the Alabama court issued an order providing that, pursuant to a stipulated settlement reached by the parties at the August 9 hearing,[3] D. H. was adjudicated dependent[4] and would remain in protective custody, the matter was set for a dispositional hearing on December 5, 2022, and the Alabama court would "contact Fulton County, Georgia regarding disposition." The Alabama court subsequently transferred the case to the Fulton County Juvenile Court, and D. H. was

---

[3] The record contains no transcript of this hearing.

[4] Alabama law defines a dependent child in part as one who has been adjudicated dependent by a juvenile court and is in need of care or supervision and: whose parent subjects the child or any other child in the home to abuse or neglect; who is without a parent willing and able to provide for the care, support, or education of the child; or whose parent is unable or unwilling to discharge his or her responsibilities to the child. Ala. Code § 12-15-102 (8).

placed in the custody of the Fulton County Department of Family and Children's Services.

Holland filed in the Georgia court a motion to vacate the Alabama court's finding of dependency based on a lack of subject matter jurisdiction under the UCCJEA. Holland argued that Georgia was D. H.'s "home state" under the UCCJEA and that even if the Alabama court could exercise temporary emergency jurisdiction, such jurisdiction did not authorize it to find D. H. dependent once he was placed in protective custody and any emergency ended. Following a hearing, the Georgia court issued an order denying the motion to vacate, concluding that the Alabama court had temporary emergency jurisdiction to find D. H. dependent based on the parties' stipulation and on facts that occurred within Alabama. Holland then filed this appeal.

1. D. H.'s counsel argues that this appeal is moot because D. H. has been returned to Holland's custody and the dependency case has been closed. We disagree.

"[M]ootness is an issue of jurisdiction and thus must be determined before a court addresses the merits of a claim. A case is moot if its resolution would result in

5

the determination of an abstract question not arising upon existing facts or rights." (Citations and punctuation omitted.) *In the Interest of K. P.*, 365 Ga. App. 38, 40 (877 SE2d 289) (2022). "But there are recognized circumstances where cases that may appear to be moot are nonetheless viable due to the particular nature of the litigated issue. These circumstances occur when a ruling . . . creates collateral consequences that will continue to plague the affected party." (Citations and punctuation omitted.) Id. at 40-41. This Court has concluded that a finding of dependency is not rendered moot by the dismissal of the dependency action but has "significant collateral consequences," including potential use against the parent in a subsequent custody proceeding. Id. at 41-42. Therefore, this appeal, involving Holland's challenge to the finding that D. H. was dependent, is not moot.

2. Holland argues that the Alabama court lacked subject matter jurisdiction to find D. H. dependent under the UCCJEA's temporary emergency jurisdiction provisions because any emergency ended once he was placed in protective custody. As an initial matter, we conclude that Holland may challenge the subject matter jurisdiction of the Alabama court. Ultimately, we agree with Holland and conclude that although the Alabama court had temporary emergency jurisdiction to place D. H.

in protective custody, such jurisdiction did not authorize it to find him dependent once he was in protective custody and the emergency ended.

(a) Holland may challenge the subject matter jurisdiction of the Alabama court to find D. H. dependent. First, Holland's stipulation before the Alabama court that D. H. was dependent does not preclude her from challenging that court's subject matter jurisdiction because "[w]aiver or consent of the parties cannot confer on a court jurisdiction of a subject matter wherein it has none at law." (Citation omitted.) *Jackson v. Gamble*, 232 Ga. 149, 152 (1) (205 SE2d 256) (1974). Indeed, "objections to subject-matter jurisdiction may be raised at any time, even if the party previously acknowledged the trial court's jurisdiction." (Citations and punctuation omitted.) *Kogel*, supra, 337 Ga. App. at 140. More specifically, "in the context of a custody matter controlled by the UCCJEA, jurisdiction to make a child custody determination is subject matter jurisdiction, and an agreement of the parties to confer jurisdiction on a court that would not otherwise have jurisdiction under the UCCJEA is ineffective." (Citation, punctuation, and emphasis omitted.) *M. B. L. v. G. G. L.*, 1 So3d 1048, 1051 (Ala. Ct. App. 2008).

Second, the Full Faith and Credit Clause of the U. S. Constitution — which provides that "Full Faith and Credit shall be given in each State to the . . . judicial Proceedings of every other State," U. S. Const. Art. IV, Sec. 1. — does not preclude Georgia courts from considering Holland's challenge to the Alabama court's subject matter jurisdiction. The order in which the Alabama court found D. H. dependent was an interlocutory or non-final order, and "the courts of this State are not bound under the full faith and credit clause . . . to enforce pendente lite or interlocutory judgments of a sister State that are by their own terms subject to revision or revocation." *Ferster v. Ferster*, 219 Ga. 543 (134 SE2d 600) (1964); see also *Blue v. Blue*, 243 Ga. 22, 23 (252 SE2d 452) (1979) ("Georgia is not required by the full faith and credit clause to recognize non-final decrees."). In Alabama, an interlocutory order "is subject to modification at any time before entry of the final judgment." (Citation and punctuation omitted.) *Jackson v. Davis*, 153 So3d 820, 825 (Ala. Ct. App. 2014); see also *D. D. v. Calhoun County Dept. of Human Resources*, 81 So3d 377, 379-380 (Ala. Ct. App. 2011) (order that terminated the mother's parental rights but did not address the DHR's request to terminate the father's rights was interlocutory and subject to revision at any time before final judgment).

8

(b) Next, although the Alabama court had temporary emergency jurisdiction under the UCCJEA to place D. H. in protective custody, such jurisdiction did not authorize it to find him dependent once he was in protective custody and the emergency ended.

> [T]he National Conference of Commissioners on Uniform State Laws promulgated the UCCJEA in 1997 to deal with the problems of competing jurisdictions entering conflicting interstate child custody orders, forum shopping, and the drawn out and complex child custody legal proceedings often encountered by parties [when] multiple states are involved.

(Citation and punctuation omitted.) *Delgado v. Combs*, 314 Ga. App. 419, 424 (724 SE2d 436) (2012). Alabama and Georgia have enacted largely similar versions of the UCCJEA. See Ala. Code § 30-3B-101 et seq.; OCGA § 19-9-40 et seq.

The UCCJEA governs a juvenile court's subject matter jurisdiction over "child custody proceedings." *M. B. v. B. B.*, 244 So3d 128, 131 (Ala. Ct. App. 2017). The UCCJEA defines a "child custody proceeding" in part as "[a] proceeding in a court in which legal custody, physical custody, or visitation with respect to a child is an issue. The term includes a proceeding for . . . dependency . . . in which the issue may appear." Ala. Code § 30-3B-102 (4). A Georgia court "shall recognize and enforce a

child custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with" the UCCJEA. OCGA § 19-9-83 (a).

"We construe the UCCJEA liberally so as to carry out the remedial aspects of the law. One of the remedial aspects is assuring that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection." (Citation and punctuation omitted.) *Bowman v. Bowman*, 345 Ga. App. 380, 386 (2) (b) (811 SE2d 103) (2018) (physical precedent only). Indeed, jurisdiction under the UCCJEA is "heavily dependent" on the question of whether the state exercising jurisdiction is the child's "home state," id. at 385 (2) (a), and "[t]he general rule is that the court where the parent with legal custody resides has the exclusive right to award change of custody." (Citation omitted.) *Prabnarong v. Oudomhack*, 334 Ga. App. 723, 727 (780 SE2d 393) (2015). The UCCJEA defines a child's "home state" as "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding." OCGA § 19-9-41 (7); Ala. Code § 30-3B-102 (7).

The UCCJEA provides Alabama courts with several bases for exercising jurisdiction, but the only basis on which the Alabama court could exercise jurisdiction

here was a provision for temporary emergency jurisdiction. Ala. Code § 30-3B-201 (a)[5] provides:

> Except as otherwise provided in Section 30-3B-204, [an Alabama court] has jurisdiction to make an initial child custody determination only if:
>
> (1) [Alabama] is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from [Alabama] but a parent or person acting as a parent continues to live in [Alabama];
>
> (2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that [Alabama] is the more appropriate forum under Section 30-3B-207 or 30-3B-208, and:
>
>> a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with [Alabama] other than mere physical presence; and

---

[5] This statute is identical to OCGA § 19-9-61, the main UCCJEA jurisdictional provision here in Georgia.

b. Substantial evidence is available in [Alabama] concerning the child's care, protection, training, and personal relationships;

(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of [Alabama] is the more appropriate forum to determine the custody of the child under Section 30-3B-207 or 30-3B-208; or

(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).

Subsection (b) of this statute provides that "[s]ubsection (a) is the exclusive jurisdictional basis for making a child custody determination by" an Alabama court, while subsection (c) provides that "[p]hysical presence of a child is not necessary or sufficient to make a child custody determination." Ala. Code § 30-3B-201 (b), (c). Ala. Code § 30-3B-201 did not provide the Alabama court with jurisdiction here because Alabama has never been D. H.'s home state, Georgia is his home state, and no Georgia court has declined to exercise jurisdiction. See *S. C. v. J. T. C.*, 47 So3d 1253, 1256 (Ala. Ct. App. 2010) (Alabama court did not have jurisdiction under Ala. Code § 30-3B-201 because Alabama was not the child's home state, Virginia was the child's home state, and Virginia had not declined to exercise jurisdiction).

However, Ala. Code § 30-3B-204 (a) provides that an Alabama court "has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." The Alabama Court of Appeals has explained that a court's temporary emergency jurisdiction "is extremely limited, allowing the court to make only such temporary orders as are necessary to protect the child until the state that has jurisdiction under Ala. Code 1975, §§ 30-3B-201 through 30-3B-203 enters an order." (Citation and punctuation omitted.) *M. B. L.*, supra, 1 So3d at 1051; see also *J. D. v. Lauderdale County Dept. of Human Resources*, 121 So3d 381, 385 (Ala. Ct. App. 2013). The Official Comment to Ala. Code § 30-3B-204 (a) explains that such jurisdiction is "an extraordinary jurisdiction reserved for extraordinary circumstances," and that "a custody determination made under the emergency jurisdiction provisions . . . is a temporary order. The purpose of the order is to protect the child until the state that has jurisdiction under Sections 201-203 enters an order." We have similarly explained that "[t]he purpose of the emergency exception to home state jurisdiction is to allow an appropriate non-home state court to exercise jurisdiction where the circumstances

13

and the well-being of the child demand immediate action in such state." *Rozier v. Berto*, 230 Ga. App. 427, 429 (496 SE2d 544) (1998).

Significantly, the Alabama Court of Appeals has explained that "[w]hen acting under emergency jurisdiction, . . . a juvenile court may not adjudicate a child dependent or make an award of custody, other than a pendente lite award of custody." *C. H. v. Lamar County Dept. of Human Resources*, 324 So3d 391, 395 n.2 (Ala. Ct. App. 2020); see also *J. D.*, supra, 121 So3d at 385 ("[A] juvenile court exercising temporary emergency jurisdiction under § 30-3B-204 does not have jurisdiction to adjudicate dependency and award custody by virtue of the limited jurisdiction provided to it."); *R. S. v. B. C.*, 248 So3d 10, 13 (Ala. Ct. App. 2017); *M. B.*, supra, 244 So3d at 132-133. Contrary to the assertion of D. H.'s counsel, this rule is not limited to situations where an Alabama court exercises temporary emergency jurisdiction and adjudicates dependency despite being aware of another state's custody proceeding.

In *S. C. v. J. T. C.*, 47 So3d 1253, 1254 (Ala. Ct. App. 2010), an Alabama juvenile court entered an order awarding custody of the child to the father in 2007, and the child and the father subsequently moved to Virginia. In 2008, the maternal aunt transported the child to the Alabama home of the maternal grandmother, and the

grandmother filed in an Alabama juvenile court a petition for custody in which she alleged that the child was dependent. Id. at 1254-1255. After the juvenile court awarded the grandmother temporary custody, the court held a final hearing and entered a judgment in 2009 finding the child dependent and awarding the grandmother custody. Id. at 1255. The Alabama Court of Appeals acknowledged that the juvenile court properly exercised temporary emergency jurisdiction to grant the grandmother temporary custody because it could have reasonably found that the child was being subjected to or was threatened with mistreatment or abuse. Id. at 1256-1257. However, despite there being no indication of another state's custody proceeding, the Court concluded that "temporary emergency jurisdiction did not authorize the juvenile court to conduct the subsequent dependency proceeding," explaining that the 2009 judgment "did not simply resolve the temporary emergency affecting the welfare of the child; it went further by finding the child dependent and by awarding custody of the child to the maternal grandmother." Id. at 1257.

Here, the Alabama court's temporary emergency jurisdiction did not authorize it to find D. H. dependent because at the time of such finding he had not been "abandoned," and it was not "necessary in an emergency to protect the child because

the child, or a sibling or parent of the child, [was] subjected to or threatened with mistreatment or abuse." (Citation omitted.) *M. W. v. C. W.*, 60 So3d 301, 305 (Ala. Ct. App. 2010) ("[T]he juvenile court had jurisdiction only to determine custody of the children under § 30-3B-204. Assuming that the juvenile court properly exercised temporary emergency jurisdiction in entering the March 29, 2010, orders, that temporary emergency jurisdiction did not authorize that court to enter the May 28, 2010, judgments finding the children dependent and awarding custody of the children to the paternal grandmother."). We have previously held that there was no true emergency requiring a Georgia court to exercise jurisdiction for protection of the child where the child was already in the custody of the party who was seeking to invoke the court's temporary emergency jurisdiction. See *Prabnarong*, supra, 334 Ga. App. at 726; *Anderson v. Deas*, 273 Ga. App. 770, 771 (1) (a) (615 SE2d 859) (2005); *Rozier*, supra, 230 Ga. App. at 428-429. Thus, while the Alabama court had temporary emergency jurisdiction to place D. H. in protective custody, such jurisdiction did not authorize it to subsequently find him dependent because a finding of dependency was not necessary to protect him once he was already in protective custody. See *Button v. Waite*, 208 SW3d 366, 370 (II) (A) (Sup. Ct. Tenn. 2006) (Tennessee trial court's

16

indefinite continuation of its exercise of emergency jurisdiction "for all purposes" clearly contravened the provisions of Tennessee's version of the UCCJEA, "which authorize the exercise of emergency jurisdiction on a temporary basis only"); cf. *M. B.*, supra, 244 So3d at 133 (stating that an Alabama court "would arguably have had [temporary emergency] jurisdiction to enter" a temporary order awarding custody of the child to a relative and finding the child dependent, where that order was the first order the court issued regarding the child).

In conclusion, because the Alabama court lacked subject matter jurisdiction to find D. H. dependent, we reverse the Georgia court's denial of Holland's motion to vacate the finding of dependency.

*Judgment reversed. Markle and Land, JJ., concur.*